### Wytheville

## MAHONEY AND OTHERS V. FRIEDBERG AND OTHERS.

#### June 10, 1915.

1. DEEDS—*Construction—Boundaries—Reference to Plat.*—The language of a deed is to be taken most strongly against the grantor, and when a lot is described as on a map or plat, to which reference is made, such map or plat becomes, for the purpose of description, a part of the deed, and has the same effect as though it were incorporated into the instrument.

2. DEEDS—*Water Boundary—Construction—Riparian Rights—Accretions.*—When the owner of a city lot conveys with water as a boundary, in the absence of any reservation or restriction, the grantee takes as a riparian owner and is entitled to the accretions. It will never be presumed that the grantor reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the share of the navigable water. Such privileges and conveniences generally constitute the chief inducement to the purchase and an important element in determining the price.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*G. M. Dillard,* for the appellants.

*John B. Jenkins, G. Tayloe Gwathmey* and *William A. Graff,* for the appellees.

KEITH, P., delivered the opinion of the court.

The bill in this case was filed by Mary R. Mahoney and others, residuary devisees of Edward Mahoney, making Solomon Friedberg and others defendants, and stating their case as follows: That the plaintiffs are seized of a fee simple estate in a parcel of land in the city of Norfolk, commencing on the west side of James street, now called Monticello avenue, and formerly known as Armistead road, or Armistead bridge road, at a point where the southern line of Lot No. 64 on the plat of the property of Edward Mahoney, which is duly recorded in the clerk's office of the Corporation Court of the city of Norfolk, intersects the western line of said street, avenue or road, and extending thence southwardly along the said street, avenue or road a distance of thirty-five feet, more or less, to the centre of Smith's creek; thence westwardly along the centre of Smith's creek to the eastern side of Granby street; thence northwardly along the eastern side of Granby street, a distance of fifty-four feet, more or less, to the intersection of the southern line of Lot No. 41 on the said Mahoney plat with the eastern line of Granby street, and thence eastwardly along the southern line of Lots 41 and 64, on the said plat, to the point of beginning.

This land is claimed by the plaintiffs under the residuary clause of the will of their father, Edward Mahoney, who acquired it under a deed from John Mahoney and wife, in which it is described as, "All that certain tract, piece or parcel of land, known as 'The Bower,' with the buildings thereon, situated in the county of Norfolk, containing.... acres, more or less, adjoining the corporate limits of the city of Norfolk near Armistead's bridge, and bounded on the north and east by the public road leading to the said bridge, on the west by the land of Abel Llewellyn, and on the south by the port warden's line in Smith's creek as the

same is now or may hereafter be established." The bill claims that Smith's creek, which constitutes the southern boundary of the land, was and is a tidal inlet extending eastwardly from the Elizabeth river, through a section of the city of Norfolk, and that the said creek throughout the entire extent of the boundaries of the property in dispute, especially between James street and Granby street, where the parcel of land is located, ebbs bare at mean low water, so that the entire parcel of land in question is above mean low water mark; that Edward Mahoney, soon after acquiring title and possession under the deed in 1891 from John Mahoney, proceeded to have the tract subdivided and platted into lots and streets by the city engineer of Norfolk and the plat of the same recorded in Plat Book 1, page 7, a certified copy of which plat is filed with the bill as Exhibit "C"; that Edward Mahoney thereupon sold to various persons certain of the lots with reference to, and according to the location given on the said plat, and among others he sold Lots 41 and 64 to J. Bunyan Jones, by deed dated June 18, 1906, and by successive conveyances the said two lots were transferred to and became vested in Solomon Friedberg, the defendant, who now owns the same; that a large portion of the land purchased and platted by Edward Mahoney consisted of marsh lots, lying between high water and low water, over which the tide ebbed and flowed, being alternately covered with water and bare; that when Edward Mahoney acquired this tract of land, embracing all of the high land therein, extending down to high water mark and beyond to the port warden's line, as the same then was or might thereafter be established, he acquired all of the land, under this general description, within the boundaries mentioned extending to the line of mean low water in Smith's creek, and as the whole creek opposite this land ebbs bare at low water, he acquired title to the centre of the creek, but when he sold lots 41 and 64 to J.

Bunyan Jones, he sold by specific description only the clearly defined space embraced in the lots, as defined on the recorded plat, without mention of any riparian rights or other appurtenances, and that said Friedberg, the successor in title to J. Bunyan Jones to the said two lots, occupies the same position as Jones and has no legal or equitable claim to any other land lying south of the limits of the said two lots as defined on the said plat, yet he, the said Friedberg, has claimed, and now claims to own, the parcel of land first described in the bill of complaint, lying between the southern boundary of lots 41 and 64, aforesaid, and the centre of Smith's creek.

That there may be a clear apprehension of the lots here mentioned, the accompanying diagram is inserted.

The bill then goes on to say that at the time of the purchase by John Mahoney of the said parcel of land, and at the time of his conveyance to Edward Mahoney, as aforesaid, there was reputed to be a port warden's line extending along the northern side of Smith's creek, within the

boundaries of the said tract of land, "but your complainants question the legality of the same for the reason that the port warden's line is intended to be a line defining the line of navigation for various purposes in waters beyond mean low water mark, and as the owner of the shore owns to low water mark in Virginia and as the location in question on Smith's creek is above low water mark, no port warden's line was or could have been established at the place in question."

Complainants allege that they acquired title to the parcel of land in question, but they further allege that on March 5, 1911, William H. Mann, Governor of Virginia, conveyed to I'Anson and Eason by deed duly recorded in the clerk's office of the Corporation Court of the city of Norfolk, in pursuance of an application under the patent laws of Virginia, the said parcel of land, and on the theory that the land lying between the southern boundary of lots 41 and 64 and the centre of Smith's creek was beyond mean low water mark and was therefore the property of the State of Virginia; that complainants' devisor, Edward Mahoney, thereupon entered a suit in the Court of Law and Chancery of the city of Norfolk against I'Anson and Eason to set aside said grant and deed, and to maintain his title, and thereupon I'Anson and Eason abandoned their claim and by deed duly recorded conveyed the land first described in this bill of complaint to Edward Mahoney. A copy of this deed is also filed as Exhibit "F."

The immediate grantor of Solomon Friedberg was one Farant, from whom Friedberg acquired lots 41 and 64, and claims to have acquired an interest in the parcel of land first described in the bill lying between the southern line of lots 41 and 64, aforesaid, and the centre of Smith's creek.

The complainants in the bill allege that they became seized and possessed of the land in the manner described,

that they are now so seized and possessed, and they charge that the claim of Friedberg to ownership of or interest in said land is without foundation in law or equity and constitutes a cloud upon their title; and they pray that the cloud be removed and their title quieted; that the full and complete fee simple title to the parcel of land in question may be decreed to·be vested in complainants; that the defendants may be restrained and enjoined from all further acts which would becloud the title to the said parcel of land, and for all other and further relief which may be suited to the case and agreeable to equity.

Friedberg and his co-defendants answered this bill and denied that complainants are possessed of a fee simple title to the land described in the first paragraph of the bill. They contend that in the deed from John Mahoney and wife to Edward Mahoney, dated March 5, 1890, under which Edward Mahoney acquired title, the land conveyed to him is described as follows: "On the north and east by a public road leading to said bridge, on the west by the land of Abel Llewellyn, and on the south by the port warden's line in Smith's creek, as the same is now or may hereafter be established"; that at and before that time "the port warden's line had been duly established by the board of harbor commissioners of the cities of Norfolk and Portsmouth south of the said property and any property rights south of said port warden's line were subject to the rights of the public therein, and Edward Mahoney parted with any right of title or riparian or other rights south of the said port warden's line and in front of lots 41 and 64 which were conveyed by Edward Mahoney to J. Bunyan Jones and by apt and proper conveyances such riparian and other rights became and now are the property of Solomon Friedberg." They deny that said parcel of land described in paragraph one of the bill passed under the will of Ed-

ward Mahoney, because neither said lands nor any rights therein were the property of the said Edward Mahoney at the time of his death, but were the property of the defendant, Farant, subject to the rights of the public therein; and respondents claim that the property in dispute and all riparian and other rights thereto now belong to the defendant, Solomon Friedberg, subject to the deed of trust from him to John B. Jenkins and William A. Graff, trustees, mentioned in the bill, and that the only cloud upon the title thereof is the claim of the complainants set up in their bill.

From what has been said it will be seen that the decision of this controversy turns upon the southern boundary line of lots 41 and 64. The deed, from John Mahoney to Edward Mahoney described the land conveyed as bounded on the south by the port warden's line in Smith's creek, "as the same is now or may hereafter be established." The deed from Edward Mahoney to J. Bunyan Jones conveys twenty lots of land situated in the city of Norfolk, on Granby street and the Armistead bridge road. By referring to the map accompanying this opinion it will be seen that lot 41 is bounded on the west by Granby street, and of the twenty lots conveyed by deed to Jones twelve are bounded on the west by Granby street, lot No. 41 being the southernmost of the twelve, and all of which have a front of twenty-five feet on Granby street except No. 41, which has a frontage of thirty-two feet on that street. On Monticello avenue, or James street, the remaining eight of the twenty lots have a frontage of twenty-five feet, except lot No. 64, which has a frontage of thirty feet on that street. It will be observed that the two lots 41 and 64 contain no description except that 41 has a frontage of 32 feet on Granby street and runs back 100 feet, while 64 has a frontage of 30 feet on Monticello avenue, or James street, and runs back

100 feet to the west.   There is no reservation of any interest or right of any kind or description in this deed.   At the time it was executed, it appears from the deposition of W. T. Brooke, the engineer of the city of Norfolk, that a port warden's line was established along the boundary of the Mahoney property on Smith's creek, and the property of Edward Mahoney was laid off and platted by the engineer into lots and streets, and Exhibit "C" filed with the bill is identified by the engineer as a correct representation of the work done by him.   In the course of his deposition Mr. Brooke was asked this question:

"Are the beds of streams or any land outside of these port warden lines, indicated on this exhibit, waste or unappropriated land?

"A. There is no indication here of any waste or unappropriated land; on the contrary, it is marked "Smith's creek.'"

The language of a deed is to be taken most strongly against the grantor.   In this case the lots are conveyed in express terms as "described on the map of the land of Edward Mahoney made by W. T. Brooke, city engineer, in January, 1891."   That map shows the southern boundary of lots 41 and 64 as Smith's creek, and there is no suggestion of any reservation or indeed of the existence of any land owned by the grantor to the south of the line described as Smith's creek appearing on the map referred to as descriptive of the lots conveyed.

We regard it also as confirmatory of the view that no reservation was intended, and in fact that no land belonging to Edward Mahoney existed between the southern boundary of these lots as ascertained by reference to the map made by the city engineer, that all the lots north of 41 and 64, the two lots the southern boundaries of which are in dispute, have a front of 25 feet on Granby street and Mon-

ticello avenue, respectively, except lot 41, which has a front on Granby street of 32 feet, and lot 64, which has a front on Monticello avenue of 30 feet. We can see no reason for departing from a uniform width of 25 feet of eighteen of the lots conveyed, except that the front of 32 feet in lot 41 and 30 feet in lot 64 covered and disposed of all the land at that time held at this point by Edward Mahoney.

In *Watson* v. *Peters*, 26 Mich. 508, the court said: "The owner of city lots bounded on navigable streams, like the owner of any lands thus bounded, may limit his conveyance thereof within specific limits, if he shall so choose, but when he conveys with the water as a boundary, it will never be presumed that he reserves to himself proprietary rights in front of the land conveyed, which he may grant to others for private occupation, or so occupy himself as to cut off his grantee from the privileges and conveniences which appertain to the shore of the navigable water. Such privileges and conveniences constitute a part, and in many cases the principal part, of the value of the grant, and it is precisely in these cases of city lots that they are of most value, and generally constitute the chief inducement to the purchaser, and the chief, or at least a very important element, in determining the price.

In *Board of Park Commissioners* v. *Taylor*, 133 Iowa 459, 108 N. W. 927, it was contended that the defendants were limited in the size of their lots to the dimensions shown on the plat, but the board said: "Without doubt the plat is to be interpreted as showing that the east and west lines bounding Lot 3 on the north and south are each 38 feet long, the east and west line between lots 1 and 2 is 34 feet long, and the south line of Lot 1 is 30 feet long. It is conceded that the conveyances of these lots described them by number only, and not either by dimensions or by reference to the Des Moines river. But when a lot is thus described

as on a map or plat, to which reference is made, such map or plat becomes, for the purpose of description a part of the deed and has the same effect as though it were incorporated into the instrument. Therefore, defendants' deeds, although they contain no calls to the Des Moines river, do, by reference to the plat, call for lots extending from First street west to the Des Moines river; for they are so represented on the plat as of specified dimensions east and west; but where a monument is referred to, as for instance, the shore of a river or lake, such monument, when identified and its location established, controls courses and distances in the description."

*Thomas Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872, was a case of accretion to a lot on the Missouri river. In 1853 Jefferis had a patent for Lot 4, fractional section 21, etc., according to official plat. Thereafter the land was conveyed simply as lot No. 4, section 21, etc. About the time of the original entry new land had formed along the whole north line of this lot and continued to form until about forty acres had been added by accretion. The defendant contended that some area, however narrow, had formed between the line when the survey was made in 1851 and when it was entered by the patentee in 1853, and the deed having been simply for Lot No. 4, it passed title to the lot as it was at the time of the survey and not at the date of the deed, and that as accretions were formed while the several successive grantees held the title, such accretions did not pass by their deeds. The court said: "But we think that in all the deeds the accretion passed by the description of the land as lot No. 4 * * * When each successive owner took his title lot No. 4 was a water lot having the rights of wharfage, landing and accretion."

The case of *Commonwealth* v. *Alger*, 7 Cush (Mass.) at p. 80, is an instructive one, but we do not perceive that it aids

67

the case of appellants. It is doubtless true that "The upland and flats may be severed by the owner at his pleasure. He may alien the flats or any part of them without the upland, or the upland without the flats; and it will depend on the descriptive terms of the conveyance, embracing or excluding them, whether any and what part of them will pass." But continuing the court says: "We think it entirely clear that, since the adoption of the colony ordinance, every grant of land bounding upon the sea, or any creek, cove, or arm of the sea, and either in terms including flats to low water mark or bounding the land granted on the sea or salt water, with no terms limiting or restraining the operation of the grant, and where the lands and flats have not been severed by any intervening conveyance, has had the legal effect to pass an estate in fee to the grantee, subject to a limited right of way for boats and vessels."

As we have seen, there is in the deed under consideration no term limiting or restraining the operation of the grant that the lots as described on the map referred to in the deed bound upon Smith's creek, and Solomon Friedberg is in consequence the owner of those lots as shown on the plat with a right to all the accretions formed in the creek adjacent thereto.

The case of *Higginbotham* v. *Stoddard*, 72 N. Y. 94, is much relied upon by appellants. It holds that "The rule that in the construction of a deed, courses, distances and quantities must yield to natural or artificial monuments called for by the grant, is not inflexible; it applies with less force to artificial than to natural monuments, and where there is anything in the description showing that the courses and distances are right, they will prevail." With all which, of course, we take no issue. It clearly appears that in that case the plaintiff had not by his deed conveyed the land

which was in dispute between him and his grantee; while in this case, as we have said, it plainly appears that the deed from Edward Mahoney, by reference to the map made by the city engineer, adopted Smith's creek as the southern boundary, and that whatever changes may have taken place in the intervening years by way of accretion belong to the defendant, Friedberg, as owner of lots 41 and 64.

We are of opinion to affirm the decree of the circuit court.

*Affirmed.*