**Wytheville.**

STATE SAVINGS BANK AND ANOTHER V. STEWART.

JULY 30, 1896.

Absent, Harrison, J.

1. DEEDS—*Repugnant Descriptions—Intention of Parties—Case at Bar.*—A false description does not render a deed or other writing inoperative, if, after rejecting what is false there remains a sufficient description to ascertain with legal certainty the subject matter to which the instrument applies. And if two descriptions be given, each equally explicit, but repugnant to each other, that description will prevail which the whole deed shows best expresses the intention of the parties. The court will also look to the surrounding facts, and will adopt that description, if certain and definite, which, in the light of such facts will most effectually carry out the intention of the parties. In the case at bar there were two repugnant descriptions, but the grantor owned the lots answering to only one of them, and it was with reference to these lots that the parties dealt. This description being definite and certain, should be adopted, and the deed of the grantor declared operative to convey the lots so described.

2. DEED—*Effect of Reference to a Map for Description.*—Where a map of land is referred to in a deed for the purpose of fixing its boundaries, the effect is the same as if it were copied into the deed.

3. DEEDS—*Description of Land—Position in Deed of True and False Description.*—It is immaterial whether the true or the false description of land be placed first. The courts will reject the false wherever found, and give effect to the intention of the parties when so expressed as to enable the premises intended to be conveyed to be identified.

Appeal from a decree of the Hustings Court of the city of Roanoke, pronounced September 30, 1893, in a suit in chancery, wherein the appellee was the complainant, and James Ellwood and others were the defendants.

*Affirmed.*

Statement.

On March 20, 1890, E. H. Stewart and wife conveyed to James Ellwood two lots of land in the city of Roanoke, describing them as situated at the Northwest corner of Trout avenue and "I" street, and also describing them as lots 9 and 10, section 5 of the West End map, to be found on file in the clerk's office of the Hustings Court of the city of Roanoke, Va., to which map reference was made. The lots actually sold by Stewart to Ellwood were situated at the Northwest corner of Trout avenue and "H" street, instead of "I" street, as stated in the deed. A deed of trust was taken on the same day to secure deferred payments of purchase money. Sometime afterwards the error in the description was discovered, and the lots were conveyed by Stewart and wife by a correct description, by a deed bearing date November 12, 1890. The last mentioned deed sets out the error mentioned in the description which was contained in the first deed, and provides "that nothing herein contained shall in any way affect the lien of any deed of trust that may be outstanding on said lots."

Ellwood sold and conveyed the lots to Maupin, October 28, 1890, and Maupin sold and conveyed the same lots to Morris, January 22, 1891, each of these purchasers giving deeds of trust to secure deferred payments of purchase money. The bill in this case was filed by E. H. Stewart against Ellwood and wife, and the subsequent alienees, and the trustees in the deeds made by them, for the purpose of asserting the lien of Stewart on the two lots which were actually sold and intended to be conveyed, situated at the Northwest corner of Trout avenue and "H" street, and the prayer was that the two last mentioned lots might be subjected to the payment of the unpaid purchase money therefor, and that Ellwood and wife be required to execute a deed of release and cancellation of the lots situate on the Northwest corner of Trout avenue and "I" street. The bill also prayed an account of liens. The case was referred to a

commissioner, and he reported that Stewart had the first lien, after the payment of taxes, and then reported the other liens in the order mentioned, of the deeds of trust aforesaid. The State Savings Bank was the owner of the two notes for $500.00 each executed by Samuel J. Morris to J. M. Maupin, for deferred payments of purchase money. The State Savings Bank, and Simmons, the trustee, in the deed to secure the notes held by it, excepted to the report of the commissioner because he had reported the Stewart debt as the first lien on the property, after the payment of taxes. This exception the Hustings Court overruled, and confirmed the report of the commissioner. From this decree the present appeal is taken.

*McHugh & Baker*, for the appellants.

*Lucien H. Cocke*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The appellee brought suit to subject two lots in the city of Roanoke to the payment of liens thereon. The appellant the State Savings Bank, denied that the debt of the appellee was a lien upon the lots sought to be sold, but the court was of opinion that it was not only a lien, but superior to that of said appellant, and so decreed. From that decree this appeal was taken.

A separate deed of trust was given to secure each debt. If the lots sought to be sold were embraced in the deed of trust given to secure the debt of the appellee, there is no question that his lien is superior to that of the said appellant, as his deed of trust is prior in point of time, and was properly recorded.

The appellee sold and conveyed to James Ellwood in March, 1890, two lots in the city of Roanoke at the price of $2,000. It is admitted that there was a mistake in the

description of the lots conveyed, in so far as it described them as being situated at the Northwest corner of Trout avenue and " *I* " *street.* They are in fact situated at the Northwest corner of Trout avenue and " *H* " *street.* In all respects, except where " I " street is named instead of " *H* " *street*, the description given was strictly accurate. There was no mistake as to the identity of the lots intended to be conveyed. In November following, the parties having in the meantime discovered the mistake, the grantor, after reciting the fact that a mistake had been made in the deed in the description of the lots, and in what it consisted, executed a new deed in which the mistake was corrected. This deed did not reserve a vendor's lien for the unpaid purchase money, nor was a deed of trust executed contemporaneously therewith to secure it, but it was expressly provided that the execution of the last deed should not in any way affect the lien of any outstanding deed of trust on the lots conveyed.

If the lots intended to be conveyed by the deed of March, 1890, were so described therein that title to them passed to the grantee, then the grantee's deed of trust given to secure the payment of the purchase money due the appellee, and which contained the same description of the lots as was given in the deed to the grantee, passed his title to the trustee, and created a lien on the lots sought to be subjected for its payment; but, if the title to the lots did not pass by the deed of March, 1890, by reason of the mistake in describing them, then, of course, the deed of trust given for the purpose of securing appellee's debt thereon, and which contained the same description, conveyed no interest in those lots to the trustee, and created no lien thereon for the payment of appellee's debt.

There are two descriptions of the lots in the deed of March, 1890, either of which contains sufficient particulars to enable the parties to identify the lots described; but when each description is applied to its subject matter, it is ascertained

that they describe not the same, but different parcels of land. One of the descriptions given describes the lots as "beginning at the Northwest corner of Trout avenue and "I" street; thence with Trout avenue, West 100 feet to a point; thence in a Northerly direction 150 feet to an alley; thence in an Easterly direction along said alley 100 feet to "I" street; thence in a Southerly direction along "I" street 150 feet to Trout avenue, the place of beginning." Immediately following this, they are declared to be "known as lots numbers nine and ten, section five of the West End map, to be found on file in the clerk's office of the Hustings Court of the city of Roanoke, Virginia, to which map reference is hereby made for a further description of said lots."

By the first description the lots are located at the *Northwest corner of Trout avenue and "I" street*, but it is not pretended that the grantor owned the lots at that point, or that the parties dealt with reference to them. By the second description lots nine and ten in section five of the West End map are located at the Northwest corner of Trout avenue and "*H*" *street*. These lots were owned by the grantor in the deed of March, 1890. It was with reference to them that the parties dealt, and they were intended to be conveyed by that deed.

Where several particulars are given in the description, all of which are necessary to identify the land intended to be conveyed, nothing but what will correspond with all the particulars will pass by the deed; but where the deed contains two descriptions of the land equally explicit, but repugnant to each other, that description which the whole deed shows best expresses the intention of the parties must prevail. The court will look into the surrounding facts, and will adopt that description, if certain and definite, which, in the light of the circumstances under which it was made, will most effectually carry out the intention of the parties.

It is one of the maxims of the law that a false description does not render a deed or other writing inoperative, if, after

rejecting so much of the description as is false, there remains
a sufficient description to ascertain with legal certainty the
subject matter to which the instrument applies.    This rule
of construction is said to be derived from the civil law.
*Falsa demonstratio non nocet cum de corpore constat.*    2 Minor's
Inst. 1063 (4th Ed.); 1 Greenleaf on Ev., sec. 301; 2 Taylor on
Ev., sec. 1218, &c.; *Wooten* v. *Redd,* 12 Gratt. 196, 209; *Preston & Massie* v. *Heiskell,* 32 Gratt. 48, 59 and 60; Broom's Legal Maxims, 629, &c. (7th Ed.)

In the case of *Loomis* v. *Jackson,* 19 Johnson 449, a lot was
described in the deed by a wrong number, yet, being also
described by fixed and known objects, it was held that the
number of the lot might be rejected.

In *Sharp* v. *Thompson,* 100 Ill. 467 (39 Am. Rep. 61,) the
mortgage under consideration described the several lots conveyed by numbers with the additional clause " being all
block twenty-five."    Block twenty-five did not contain the
lots mentioned in the deed, but they were in another block.
It appearing, however, that it was the intention of the mortgagor to mortgage the block in which he resided and that
he resided in block twenty-five, it was held that block twenty-five was, and the lots named were not, subject to the mortgage.

In *Worthington* v. *Hylyer,* 4 Mass. 196, the description in
the deed was " all that my farm of land in Washington, on
which I now dwell, being lot number seventeen in the front
division of lands there, containing one hundred acres, with
my dwelling house thereon standing, bounding west on the
land of Joseph Chapel, northerly by a pond, easterly by lot
number eighteen, and southerly by lot number nineteen,
having a highway through it."    The limits of the lots were
correctly described, but the farm on which the grantor lived
was not number seventeen, but a different parcel of land.    The
court rejected the false description, because the description
was sufficiently definite without it, and if it were considered

an essential part of the description the effect would render the deed inoperative. Many instances of the application of this rule are cited in the text-books and decisions. 2 Minor's Inst. pp. 1063, &c.; 1 Greenleaf on Ev., sec. 301, &c.; Broom's Legal Maxims, pp. 629, &c.; 2 Devlin on Deeds, sec. 1016, &c., sec, 1038, &c.; *Wooten* v. *Redd,* 12 Gratt. 196.

Applying it to this case there is no difficulty in reaching the conclusion that the lots bought and sold, and which were intended to be conveyed by the deed of March, 1890, passed by it.

After rejecting the first or false description, the lots conveyed are described as two lots " known as lots Nos. 9 and 10, section 5 of the West End map to be found on file in the clerk's office of the Hustings Court of the city of Roanoke, Va., to which map reference is hereby made for a further description of said lots."

This remaining description is explicit, and clearly sufficient to fully identify the lots intended to be conveyed. In the subsequent conveyances of the lots, including that correcting the mistake in the deed of March, 1890, one of the descriptions given them is in substance that they are known as lots 9 and 10, section 5, in the map of the West End Land Company of Roanoke, Va. In the deed of trust which secures the debt of the appellant, they are described as " All those certain lots or parcels of land situated in the city of Roanoke, Va., and known as lots 9 and 10, section 5, as shown by the map of the property of the West End Land Company on file at the office of the clerk of the Hustings Court of the city of Roanoke, Virginia, it being the same property conveyed to the party of the first part by deed bearing date of January 22, 1891."

Where a map of land is referred to in a deed for the purpose of fixing its boundaries, the effect is the same as if it were copied into the deed. *Cox* v. *Hart,* 145 U. S. 376; *Jeffries* v. *East Omaha Land Co.,* 134 U. S. 178.

It is a matter of no consequence which part of the description be placed first, and which last. The courts will reject the false wherever found, and give effect to the intention of the parties, if the remainder of the description is sufficient to enable the premises that were intended to be conveyed to be identified. 2 Taylor on Ev., sec. 1222; 1 Greenleaf on Ev., sec. 301.

The lots which are sought to be sold in this case having passed by the first conveyance of the appellee to Ellwood, dated in March, 1890, his conveyance of the same lots in trust to secure the payment of the appellee's debt for purchase money, created a lien thereon which is superior to the lien of the appellant.

This was the conclusion reached by the Corporation Court of the city of Roanoke, and its decree must be affirmed.

*Affirmed.*