# Richmond.

## ANNIE E. SMITH *v.* L. J. BAILEY.

### Feburary 26, 1925.

1 EJECTMENT—*Title—Parties Claiming from Common Grantors—Defendant Setting up Outstanding Title in Himself.*—Where, in an action of ejectment, plaintiff does not rely on the weakness of his adversary's title, but sets up a perfect paper title, and defendant undertakes to defeat plaintiff's title by setting up an outstanding title in himself, defendant must show a present, subsisting and operative legal title upon which he could recover against plaintiff if defendant were asserting it by action.

2. DEEDS—*Description in Deed—Extrinsic Evidence in Aid Thereof.*—Where it is a question of locating the land itself by the description used in a deed and by such extrinsic evidence in aid thereof as is necessary to make the intention of the parties as to such location clear, courts are especially lenient in considering extrinsic evidence in reference to the description, to arrive at the true location of the land conveyed.

3. DEEDS—*Construction—Location of Land—Parties who Take.*—There is a clear distinction between the rules of interpretation where the object is to ascertain the parties who take or the kind of estate taken, and where the object is to locate the land from the description contained in the deed.

4. DEEDS—*Description—Office of Description.*—The office of description in a deed is to furnish means of identification of the land intended to be conveyed.

5. DEEDS—*Description—Validity—Interpretation—Fitting Description to the Land.*—A deed conveying land, in order to be valid against a subsequent purchaser, must so describe and identify the property conveyed as to afford the means, with the aid of extrinsic evidence, of ascertaining with accuracy what is conveyed and *where* it is. Courts cannot, in case of a deed conveying land, simply interpret the language used in the descriptive part of a deed. They must fit the description to the land itself in order to ascertain what is conveyed, and where it is.

6. NOTICE—*Means of Knowledge.*—Means of knowledge with the duty of using it is equivalent to knowledge itself.

7. DEEDS—*Interpretation—Time and Relation in which Deed is to be Construed—Date of Deed—Location of Adjoining Tract.*—A deed is to be

interpreted and construed as of its date, and a call in the descriptive portion thereof for an adjoining tract of land as a monument is a call for the true location of such adjoining tract at the date of the deed; and the location of the adjoining tract, though not involved in the litigation, may be ascertained for the purpose of the interpretation of the deed calling for it.

8. DEEDS—*Interpretation—Reference to Other Deeds—By Same Grantor to Different Grantee—Location of Adjoining Tract.*—The rule that in construing one deed another deed from the same grantor to a different grantee, and in reference to a different subject matter, cannot be looked to in order to ascertain the meaning of the grantor in the first deed, has no application where the object is to locate land described in a deed and reference is made to adjoining land.

9. DEEDS—*Description—Latent and Patent Ambiguity—Intention of the Parties.*—Where, upon undertaking to locate the land described in a deed, it clearly appears that what was more or less a latent ambiguity becomes a very apparent ambiguity between the general and particular description, it is the duty of the court to ascertain the intention of the parties as gathered from the description as applied to the land itself in the light of circumstances surrounding the parties.

10. DEEDS—*Description—Particular and General Description—Repugnance—Case at Bar.*—In the instant case a grantor described the land conveyed as "the eastern thirty feet of lot twenty, in block six," "being more particularly bounded and described," giving with great particularity a description of the land by metes and bounds. The repugnance in the descriptions was more apparent than real, as the first description "the eastern thirty feet of lot twenty" is only a general designation as to the location of the lot, followed by "a more particular description."

    *Held:* That the descriptions were not necessarily inconsistent, but if they were, then the definite, particular description, which in this case is the description by metes and bounds, with no uncertainty whatever as to it, will prevail over the general description, certainly and especially where, as in the instant case, it accords with the manifest intent of the parties.

11. DEEDS—*Description—Repugnant Descriptions—Intention.*—The rule is that when there are two repugnant descriptions, *equally* explicit, that description will prevail which the *whole* deed shows best expresses the intention of the parties.

12. DEEDS—*Description—Reference to Map or Plat—Case at Bar.*—While, as a general rule, a plat referred to in a deed becomes a part of the deed, yet where, as in the instant case, the plat was only referred to in a general way, and in the particular description of the land by metes and bounds, which was very exact and positive, there was not a line or a call in the plat mentioned, the general reference to the plat will

not prevail over the exact description of the land by metes and bounds from which the land conveyed could easily be located upon the ground.

13. EJECTMENT—*Defendant's Failure to Prove Claim of Possession of Property.*—In an action of ejectment defendant claimed that her possession of the land in controversy added strength to her contention of ownership, but the record failed to show that defendant's predecessors in title were ever in possession of the land in controversy for a moment, or that they were ever put in possession by the common grantor of plaintiff and defendant, or that they ever entered into possession under their deed with the knowledge of the common grantor. Evidence of this, if it had been a fact, must have been available, but defendant's predecessors in title were not called on to testify in proof of it. The failure to prove so vital a circumstance must be taken to mean that it was not a fact.

14. EJECTMENT—*Possession—Bare Possession of Defendant—Case at Bar.*—In the instant case defendant relied on her possession of the land in controversy to strengthen her title, but defendant's possession resolved itself into bare possession which fell before the better title shown by the plaintiff. It was *prima facie* evidence of ownership only up to the point where a better title than bare possession gives is shown.

15. DEEDS—*Description—Intention of Parties—Circumstances—Existence at Time of Deed—Case at Bar.*—Circumstances surrounding the parties which help to indicate intention must be shown to have existed at the time of the execution of the deed. And in the instant case the circumstance (the fact that an outbuilding and a side porch attached to her dwelling house was located on the strip of land in controversy, which defendant relied on to support her contention of ownership of the land in controversy), was not shown to have existed at the time of the execution of the deed to defendant's predecessors in title.

16. EJECTMENT—*Boundaries—Description—Case at Bar.*—In the instant case, an action of ejectment, the common grantor of plaintiff and defendant had purchased three fifty foot lots from a land company, duly numbered and recorded as lots 19, 20 and 21. The common grantor did not sell the lots as originally laid off, but divided them into four lots and sold a lot to defendant's predecessor, described as follows: "The eastern thirty feet of lot numbered twenty, in block six, being more particularly bound and described as follows:" Beginning at a point on the avenue at the eastern line of Lavenstein, and running thence thirty feet, thence southwardly in a line parallel to the eastern line of Lavenstein, etc. The Lavenstein line was forty feet from the western line of lot 21 and not 30. Afterwards the common grantor deeded plaintiff a lot which clearly included the eastern ten foot strip of lot 20, and it was this ten foot strip that was in controversy between the

parties. An outbuilding of defendant was on this ten foot strip and the porch of her dwelling extended over the line.

*Held:* That the description in the deed to defendant's predecessors did not include the strip in question, and that defendant's bare possession must fall before the better paper title shown by plaintiff.

17. APPEAL AND ERROR—*Judgment of Appellate Court—Modified and Affirmed.*—In the instant case, an action of ejectment, judgment for plaintiff included a lot which was not in controversy. There was sufficient in the record before the Supreme Court of Appeals to enable it to render a proper judgment. Therefore the judgment was amended so as to exclude the lot not in controversy from recovery by plaintiff and to include the lot in controversy.

Writ of error to a judgment of the Circuit Court of Norfolk county, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Cole, Cole & Cole,* for the plaintiff in error.

*B. S. Nusbaum* and *H. H. Kanter,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

References in the opinion are made to the following map:

OCEAN VIEW AVE.

50 feet.

N.

| 50 feet. | B | C | D | E | F | G | H |

30 feet · 30 feet · · 30 feet · 60 feet

W — Deed Feb. 16, 1909, 30 foot front Lot part of Lot 19. A to B—Scultatus and wife to G. F. Dawber. (Lot 19) — Deed Feb. 19, 1909, 30 foot front Lot, B to D 20 feet of lot. 19 and 10 feet of Lot 20. — Scultatus and wife to H. H. Lavenstein. Lavenstein's Eastern Line D. M. — Deed June 16, 1910, Scultatus and wife to Ayrers & Garrison as described by metes and bounds Same. — Later conveyed to Annie E. Smith—30 foot front D. to F. (Lot 20) — 10 foot strip in controversy F to G. — Deed June 6, 1919. Scultatus to L. J. Bailey—all of Lot 21 and 10 feet of Lot 20 adjoining—Lot 21, G. to H. (Lot 21) — E

I K L M .N O P Q

S

The controversy in this case involves title to the ten foot strip of land fronting on Ocean View avenue, in Ocean View city, embraced within the territory designated by the letters F G P O.

On March 5, 1922, L. J. Bailey, the defendant in error here and the plaintiff in the court below, hereinafter referred to as the plaintiff, instituted an action of ejectment, in the Circuit Court of Norfolk county, against Annie E. Smith, plaintiff in error, defendant in the trial court, and hereinafter so designated, to recover the ten foot strip of land above indicated.

On July 7, 1922, the court, hearing the case by consent without a jury, found for the plaintiff, and on October 5, 1922, after maturely considering the whole case,

there being no exceptions to any evidence introduced or action of the court in the admission thereof during the progress of the trial by defendant, the court having overruled her motion to set aside the judgment and grant her a new trial, entered final judgment for the plaintiff for all the territory embraced within the letters F H Q O. The controversy is now pending here upon a writ of error duly awarded the defendant.

It was a manifest error to include in the judgment the lot 21 indicated by the letters G H Q P, since this lot was not in controversy.    But to this we will refer later.

In order to maintain the issue on his part the plaintiff first introduced his own deed from W. J. Scultatus and wife which conveyed to him:

"All that certain lot and parcel of land, situated at Ocean View, in Tanners Creek magisterial district, Norfolk county, Virginia, known and designated as lot twenty-one (21) and the adjoining ten (10) feet of lot twenty (20) in block number six (6) as shown on the plat or plan of the property of the Ocean View Cottage Company, which said plat is duly recorded in the clerk's office of the Circuit Court of Norfolk county, Virginia, in map book 5, at page 24.    Said lot twenty-one (21) and the adjoining ten (10) feet of lot twenty (20) in block six (6) on said plat, taken as a whole, fronts sixty (60) feet on Ocean View avenue, and extending back between parallel lines one hundred and fifty (150) feet, and are a part of the said property conveyed to the said William J. Scultatus by the Ocean View Cottage Company, by deed dated September 30, 1907, and duly recorded in deed book 320, at page 107, in the clerk's office of the Circuit Court of Norfolk county, Virginia, to which said deed reference is hereby made as a part of this description."

With reference to the map, this embraced all the territory indicated by the letters F H Q O.

He next introduced a copy of the map of the Ocean View Cottage Company referred to in his deed.

He then introduced, without objection by defendant, copies of the following deeds:

Deed bearing date September 30, 1907, from the Ocean View Cottage Company to Wm. J. Scultatus.

Deed bearing date February 16, 1909, from W. J. Scultatus and wife, plaintiff's grantors, to Dawber, conveying part of lot 19 (on the map) embraced in the letters A B K I.

Deed bearing date February 19, 1909, Scultatus and wife to H. H. Lavenstein, conveying the balance of lot 19, on the map, and ten feet of lot No. 20, adjoining, embracing the territory indicated by letters B D M K.

The last mentioned two deeds may be said to have been introduced in rebuttal of the contention that a proper interpretation of defendant's deed located her on the ten foot strip F to G and embraced this disputed area within her description. At least they should be considered in rebuttal of this contention, because the plaintiff had, prior to and without introducing these deeds, made out a perfect paper title to the land in controversy.

He next introduced a witness, J. R. Kirk, a surveyor, who filed a survey and plat of the property described in the deed and conveyed to the plaintiff, L. J. Bailey, indicated on the map by the letters F H Q O. This plat shows that the dwelling house occupied by the defendant is entirely to the west of the line F O but that an out house, the character of which is not testified to, is on the ten foot strip, and that a porch on the side of the house also extends over the line. This witness also testified that there was the remnant of an old fence a few inches over the eastern line of lot No. 20 (the line G P) but that it did not constitute any encroachment on the land claimed by plaintiff.

In order to maintain the issue on her part the defendant introduced copy of a deed bearing date June 16, 1910, from Scultatus, who was the immediate grantor of the plaintiff, to Ayers and Garrison; a copy of a deed of May 29, 1915, from Ayers and wife to Garrison, and her own deed from Garrison and wife, dated September 30, 1919.

She testified that she had possession of the ten feet in controversy; that the building had been constructed for a long time, and that the line of the premises immediately west of her property was generally known as the H. H. Lavenstein line.

The descriptive parts of the deeds introduced in evidence by the defendant are identical, except in her own deed from Garrison and wife, and were as follows:

"All that certain lot, piece or parcel of land, with the building and improvements thereon, situated in the county of Norfolk, State of Virginia, and known, numbered and designated on the plat of Ocean View Cottage Company, duly recorded in the clerk's office of the Circuit Court of Norfolk county, in map book 5, page 24, as the eastern thirty feet of lot numbered twenty (20) in block six, being more particularly bound and described as follows:

"Beginning at a point in Ocean View avenue at the eastern line of property of H. H. Lavenstein, and running thence along Ocean View avenue thirty (30) feet, thence southwardly in a line parallel to the eastern line of H. H. Lavenstein, one hundred and fifty (150) feet, thence westwardly in a line parallel to Ocean View avenue thirty feet to H. H. Lavenstein's line, thence northwardly along H. H. Lavenstein's line, one hundred and fifty feet to the beginning, being a part of the property which was conveyed to W. J. Scultatus by the Ocean View Cottage Company, by its deed dated September 30, 1907, and duly recorded in said clerk's office in D. B. 321, page 107."

In the defendant's own deed the description of the lot conveyed to her by Garrison and wife is identical with the two prior deeds in her chain of title, except in the significant particular that in those two deeds the language is "land with the building" (using the singular), while in the defendant's deed the plural is used, "land with the buildings."

From the foregoing, it appears that W. J. Scultatus, prior to February 16, 1909, had purchased from the Ocean View Cottage Company, and owned at that time, three lots, Nos. 19, 20 and 21, in block six, Ocean View city, on the south side of Ocean View avenue. Each lot had a frontage of fifty feet on the avenue and each ran back between parallel lines 150 feet. These lots were conveyed to Scultatus as they were originally laid out in the town survey, and the plat designating their location, and metes and bounds, was duly recorded in the clerk's office of the county of Norfolk. Scultatus has, since February 15, 1909, sold all of the land embraced in these three lots, but he did not sell the land in lots as originally laid out.

He divided the territory embraced in the three lots into four lots, and sold them as follows: On February 16, 1909, he conveyed a lot fronting thirty feet on Ocean View avenue running back between parallel lines 150 feet, being the western thirty feet of lot No. 19, to G. F. Dawber. The frontage of this lot so conveyed is designated by the letters A—B on the map.

On February 19, 1909, Scultatus conveyed another thirty foot front lot, B to D, to H. H. Lavenstein. This lot took up the balance of lot 19, twenty feet, and ten feet of lot No. 20.

On June 16, 1910, Scultatus made conveyance of a thirty foot front lot to T. M. Ayers and J. M. Garrison. Ayers later conveyed his one-half interest to Garrison

and on September 30, 1919, Garrison conveyed the lot to Annie E. Smith, the defendant.

[1] It cannot be denied that when the plaintiff rested his case he had a perfect paper title to the ten foot strip in controversy. He had presented his deed from Scultatus which beyond any peradventure of a doubt embraced this ten foot strip. He had presented with it a copy of the plat of the Ocean View Cottage Company which had been duly recorded, referred to in his deed and which located his lines definitely, and without a chance of making a mistake as to them. He filed in addition a plat by Kirk, the county surveyor, showing the lines of his lot as called for by his deed, and this embraced the ten foot lot in dispute, and Kirk testified as to the possession of the defendant. Up to this point he had undoubtedly made out a *prima facie* case which entitled him to recover. He did not need to rely on the weakness of his adversary's title. His own title was perfect and had all the elements of strength. He had located the land in dispute within the clear description of his deed.

In order to defeat the right and title of the plaintiff thus established, the defendant, as is indicated by the evidence on her behalf, seeks to show a prior outstanding title in herself.

There is no question here of the plaintiff relying on the weakness of his adversary's title to recover. The question is, had Scultatus, the common grantor, parted with the title to the ten foot strip in controversy prior to the time he had made his deed to L. J. Bailey, the plaintiff.

When the defendant undertakes to defeat the plaintiff's title by setting up an outstanding title in herself, according to well established authority, she must show a present, subsisting and operative legal title upon which

she could recover against the plaintiff if she were asserting it by action. *Holladay* v. *Moore*, 115 Va. 66, 78 S. E. 551; *Parkersburg Ind. Co.* v. *Schultz*, 43 W. Va. 470, 27 S. E. 255.

This is a case of comparison of titles. We think, as will presently appear, that if conditions in this case were reversed, that is, if the defendant had been the plaintiff, and the plaintiff had been the defendant and in possession of the land, and each had presented his title papers as they are now, there could be no question then as to Bailey's right to prevail. This is the test according to the rule laid down in *Holladay* v. *Moore, supra*. As above stated there is no question as to what land the plaintiff's deed embraces. It is located with absolute certainty by the description thereof in his title papers. There are no two interpretations possible as to his deed or as to the land it intends to convey. The sole question here is whether Scultatus had parted with the title to the strip of land in question before he executed the deed to the plaintiff. Considering the whole evidence in the case as it was considered by the trial court, does this appear? We think not.

The defendant to establish an outstanding title in herself relies:

(1) On her paper title.

    (a) The deed from Scultatus to Ayers and Garrison.

    (b) The deed from Ayers to Garrison.

    (c) The deed from Garrison to herself.

    (d) The plat of the Ocean View Cottage Company referred to in all of said deeds.

(2) Her possession at the time of the institution of the action.

(3) The location of an outhouse and the side porch attached to the dwelling house on the ten foot strip.

[2, 3] In order to determine whether Scultatus had, previously to his conveyance to the plaintiff, parted with title to the ten foot strip in controversy to Ayers and Garrison, we must ascertain what lot or parcel of land the parties intended the one to convey and the other to purchase at the time the deed from Scultatus to Ayers and Garrison was made. In other words, it is a question of locating the land itself by the description used in the deed and by such extrinsic evidence in aid thereof as is necessary to make the intention of the parties as to such location clear. Courts are especially lenient in considering extrinsic evidence in reference to descriptions used in deeds to arrive at the true location of the land conveyed. That is, there is a clear distinction between the rules of interpretation where the object is to ascertain the parties who take or the kind of estate taken, and where the object is to locate the land from the description contained in the deed. Devlin on Deeds (3rd ed.), 1015-a.

[4] The office of description in a deed is to furnish means of identification of the land intended to be conveyed. *Simpkins* v. *White*, 43 W. Va. 125, 27 S. E. 361; *Blake* v. *Doherty*, 5 Wheat. (U. S.), 359, 5 L. Ed. 109; Jones on Real Prop., section 323.

[5] A deed conveying land, in order to be valid against a subsequent purchaser, must so describe and identify the property conveyed as to afford the means, with the aid of extrinsic evidence, of ascertaining with accuracy what is conveyed and *where* it is. *Merritt* v. *Bunting*, 107 Va. 174, 57 S. E. 567, 12 Ann. Cas. 954.

It is clear from the foregoing that courts cannot, in case of a deed conveying land, simply interpret the language used in the descriptive part of a deed. They must fit the description to the land itself in order to ascertain "what is conveyed, and where it is."

With the foregoing in view, while it is not apparent on the face of the deed under consideration that there is any repugnance between the description in the deed which refers generally to the lot conveyed as the eastern thirty feet of lot 20, and the "more particular description" by metes and bounds, except that it is very noticeable that while the lot conveyed is described as the eastern thirty feet of lot 20, and the plat of the Ocean View Cottage Company is referred to, nowhere in the "more particular description" following is the line between lots 20 and 21, G P referred to, while the "Lavenstein line" D M is expressly made the nucleus from which the description starts, around which it revolves and upon which it is made to depend.

[6] But independently of this, under the foregoing authorities, it was the duty of the court to fit the description to the ground. From a strict interpretation of the *language* of the deed without attempting to locate the lot conveyed by this description, it appears that the Lavenstein line D M is thirty feet from, and parallel to, the western line of lot 21, the line G P, but as a matter of fact it is actually forty feet distant. Scultatus knew this *at the time* he made the deed. Ayers and Garrison, his grantees, knew it, since means of knowledge with the duty of using it is equivalent to knowledge itself. *Jameson* v. *Rixey,* 94 Va. page 348, 26 S. E. 861, 64 Am. St. Rep. 726; *Fulkerson's Adm'r* v. *Taylor,* 102 Va. 314, 46 S. E. 309. And a surveyor sent upon the premises to locate the lot from the description in the deed would find it out immediately. His directions are to start "at a point in Ocean View avenue at the eastern line of property H. H. Lavenstein." He is then told to go only thirty feet in an easterly direction, then south, 150 feet parallel to H. H. Lavenstein's eastern line (not along the western line of lot 21), thence west

to H. H. Lavenstein's line, thence north along Lavenstein's line to the beginning.   Note how the Lavenstein line and land are stressed throughout this entire description.   It is both the alpha and the omega of the description, and it was the duty of the court, as it would be of a surveyor, to locate this line and lot, since it was a monument, a call, in the true location of the lot conveyed.   And it was the duty to *actually* locate the Lavenstein line, *as it was at the time of the conveyance* to Ayers and Garrison, not as located at the time of the hearing of this controversy by the defendant, "the land west of me was *generally* known as the Lavenstein lot."

[7] "A deed is to be interpreted and construed as of its date, and a call in the descriptive portion thereof for an adjoining tract of land as a monument, is a call for the true location of such adjoining tract at the date of the deed; and the location of the adjoining tract, though not involved in the litigation, may be ascertained for the purpose of the interpretation of the deed calling for it."   *State* v. *Herold*, 76 W. Va. 537, 85 S. E. 733.

There could be no difficulty whatever with the aid of the town plat, and the Scultatus to Lavenstein deed, in correctly locating the Lavenstein line and the beginning point of the lot conveyed to Ayers and Garrison.

[8] (Incidentally it should be observed here that the case of *Nye* v. *Lovitt*, 92 Va. 710, 24 S. E. 345, cited in plaintiff's petition as holding that "in construing one deed, another deed from the same grantor to a different grantee, and in reference to a different subject matter, cannot be looked to in order to ascertain the meaning of the grantor in the first deed," has no application to a case of this kind where the object is to locate land described in a deed and reference is made to adjoining land.   *State* v. *Herold, supra*, applies so far as the principle therein above laid down is concerned.   The *Nye*

*Case* is one in which the court was not seeking to locate land from description, but to ascertain who the grantor intended should take under the deed. In addition the deed in the *Nye Case* does not refer to any other lands or line or deed in the description, while in the instant case the deed does, and under the authority of *State* v. *Herold, supra*, the true location of the Lavenstein land and line at the date of the deed is a monument, made so by the deed itself. The distinction is obvious.)

[9] When we undertake to locate the land described in the instant case it then clearly appears what was a more or less latent ambiguity becomes a very apparent ambiguity between what may be termed the general and the particular description. *State* v. *Herold, supra*, 76 W. Va. 537, 85 S. E. at page 735.

When this situation presents itself it is the duty of the court to ascertain the intention of the parties as gathered from the description *as applied to the land* itself in the light of circumstances surrounding the parties (*Lindey* v. *Eckels*, 99 Va. 668, 40 S. E. 23) at the time of the conveyance, and not as of the date of the trial (*State* v. *Herold, supra*).

[10, 11] The repugnance in the two descriptions however is more apparent than real when we view it in the light of what has been said and the authorities quoted.

The first description, viewed in this light, is simply and only a general designation as to the location of the lot, followed immediately by what is characterized in the deed itself as "*a more particular description*," and there isn't any doubt in the world about the location by this "more particular description."

It will be observed from a reference to the deeds introduced in evidence by the plaintiff that Scultatus had previously sold thirty feet of lot 19 to Dawber; that he

had sold the remainder of lot 19 (twenty feet) and ten feet of lot 20 to Lavenstein. This ten feet sold to Lavenstein was the western ten feet or western part of lot 20. So that all of lot 20 lying east of Lavenstein's eastern line was generally viewed by the parties as the eastern part of lot 20, and when Scultatus conveyed thirty feet of lot 20 to Ayers and Garrison he described it generally as the eastern thirty feet of the lot, but immediately added, "being more particularly bounded and described, beginning at a point in Ocean View avenue, at the eastern line of the property of H. H. Lavenstein," D on the plat, and it could be no *other*. As heretofore said, a surveyor sent upon the ground *at the time of the conveyance*, to locate the lot conveyed, would, and undoubtedly should, have located this point as the beginning point. When he examined the deed and saw the reference to the Lavenstein line as the beginning point he would, by reference to the records, including the plat referred to in the deed, locate D. From then on it would be only a matter of measurement. But note the definiteness of the description thereafter—"along Ocean View avenue, thirty feet." Nothing said about the line between lots 20 and 21, showing clearly that it was never the intention to reach that line in the thirty foot lot conveyed: "\* \* \* thence southwardly in a line parallel to the eastern line of *Lavenstein;*" (not with the western line of lot 21) another circumstance strongly indicative of intention; "thence westwardly in a line parallel to Ocean View avenue, thirty feet to H. H. Lavenstein's line, thence northwardly along H. H. Lavenstein's line 150 feet to the beginning." Note the repeated reference to the Lavenstein line in this description, indicating that this line is the guiding point in the location of the lot conveyed. And note the apparent studied avoidance of any mention of the line G P be-

tween lots 20 and 21.   In this view of the case the general reference to the plat of the Ocean View Cottage Company and to lot conveyed as the eastern thirty feet of lot 20, in block six, indicates that the parties had in mind the thirty feet east of that lot on the west which had theretofore been sold, and that this description was a general location which was particularized by the very definite, certain, and accurate description and location, immediately following.

Nothing could be more strongly indicative of the intention of the parties than the very great particularity used in the description of the lot by metes and bounds. It is so explicit that the very general reference to the eastern thirty feet of lot 20 merges into it to such a degree that ("being *more* particularly described") there can hardly be said to be two repugnant descriptions.

But the rule is that when there are two repugnant descriptions *equally* explicit (which is not the case here), that description will prevail which the *whole* deed shows best expresses the intention of the parties.   *State Savings Bank* v. *Stewart*, 93 Va. 447, 25 S. E. 543.

We think we have shown that the descriptions are not necessarily inconsistent, but if they are, then the definite, particular description, which in this case is the description by metes and bounds, with no uncertainty whatever as to it, will prevail over the general description, certainly and especially where, as in the instant case, it accords with the manifest intent of the parties. *Gilbert* v. *McCreary*, 87 W. Va. 56, 104 S. E. 273, 12 A. L. R. 1172.

In that case Judge Poffenbarger, speaking for the court, said:  "Ordinarily, a particular description of land found in a deed or will prevails over a general description thereof found in the same instrument; but, if the general description harmonizes with the manifest

intention of the parties, in the case of a deed, or of the testator, in the case of a will, as disclosed by any proper evidence, including the terms of the instrument, and the particular description does not, the ordinary rule of preference does not apply, and the general description prevails.

"If a will devising an unnumbered part of a city lot, on which there is a house bearing a certain number, described it by the number of the house and name of the street on which it fronts, calling the property a 'house and lot,' and then described the lot by metes and bounds, so as not to include all of the ground covered by the house, the general description, conforming to the manifest intent of the testator to give the house for comfortable use and enjoyment, prevails over the particular description."

In that particular case the *general* description harmonized with the manifest intention of the testator. Clearly the house was the thing he was devising.   In the instant case, as has been shown, the *particular* description harmonizes with the intention of the grantor, and under this authority should prevail.   *Mason Mathews, Thayer and Holley, Trustees,* v. *J. P. Gillespie,* 137 Va. 639, 120 S. E. 324.

We have already seen that the description by metes and bounds is very exact and positive and that standing alone it is most convincing as to intention of the parties.   There can be no mislocation of it.   What was the situation of the parties at the time the deed was made and what the circumstances?   Scultatus was subdividing three lots he had bought into four or five to sell them.   The most natural way and the business way to sell the land embraced in the original lots, once they were subdivided, was to sell all of it as it was reached, without leaving an unsalable ten foot strip between two

lots. It could never be conceived that this was Scultatus's intention. If the description, eastern thirty feet, is given the meaning plaintiff in error contends should be given it, and to the exclusion of the "more particular description," this is exactly what Scultatus did, a foolish and unbusinesslike thing. On the other hand, if the particular description by metes and bounds prevails, he did the logical and business like and sensible thing. That this was his intention is conclusively proved by his subsequent conveyance of the ten foot strip lying next to lot 21, along with that lot. If he had intended to convey it before he would not have attempted to make a subsequent conveyance of it.

[12] As against this positiveness of description and the circumstances surrounding the parties *at the time* of the execution of the deed to Ayers and Garrison, which bear out the contention of the plaintiff as to the location of the lot conveyed, we have the very general description, or rather as we have shown the very general designation, as to the location embraced in the description "eastern thirty feet." It is true that the plat of the Ocean View Cottage Company is referred to (and we are not unaware of the rule that a plat referred to in a deed becomes a part of the deed), but this plat is only referred to in a general way and there is not a line or a call in the plat anywhere mentioned in the description. On the contrary, as we have heretofore pointed out, the "more particular description" studiously avoids any reference to the line between lot 20 and lot 21, except by inference "eastern thirty feet."

Again there are no surrounding circumstances existing *at the time* the deed from Scultatus to Ayers and Garrison was executed to strengthen the contention of defendant, or to add weight to her construction.

[13] Defendant claims that her possession adds

strength to her contention, but the record utterly fails to show that defendant's predecessors in title, Ayers and Garrison, were ever in possession of the ten foot strip in controversy for a moment; that they were ever put in possession by Scultatus, or that they entered into possession under their deed with Scultatus' knowledge. Evidence of this if it had been a fact must have been available, and yet neither Ayers nor Garrison were called to testify in proof of it. The failure to prove so vital a circumstance must be taken to mean that it was not a fact.

[14] The defendant's possession therefore resolves itself into bare possession which fell before the better title shown by the plaintiff. It was *prima facie* evidence of ownership only up to the point where a better title than bare possession gives is shown. *Holladay* v. *Moore, supra.*

[15] Defendant also attaches much weight to the fact that there is an out house of some kind, the record does not disclose what, and a side porch attached to the dwelling house located on the ten foot strip. The evidence as to them has been fully set out heretofore. By reference to this evidence it will be seen that, as in case of lack of proof as to possession by Ayers and Garrison, so in reference to the building and porch, the record is as silent as the grave, not only as to whether Scultatus erected any building or porch on the ten foot strip and sold it to or put Ayers and Garrison in possession thereof, or whether they took possession with his knowledge of any building on the ten foot strip, but also as to whether there was any such building and porch there *at the time* of the execution of the deed. Circumstances surrounding the parties which help to indicate intention must be shown to have existed at the time of the execution of the deed. *State* v. *Herold, supra,* 76 W. Va. 537,

85 S. E. at page 735; *Scraggs* v. *Hill*, 37 W. Va. 706, 17 S. E. 185.    These circumstances which the defendant relies on to aid in her contention are not shown to have existed at the time of the execution of the deed.

There was evidently a building, a dwelling house, on the lot Scultatus conveyed to Ayers and Garrison, and it is a fair inference that Scultatus built the house.  The difference between the price he paid for the lot and that at which he sold it indicates this, and his deed to Ayers and Garrison specifically refers to and conveys, with the lot, the *building* thereon.   The evidence shows that the dwelling house is entirely on the thirty foot strip, described by metes and bounds, while the encroachments are a *side* porch and an outhouse of some kind. The evidence as to the old fence was that it constituted no encroachment and therefore is not to be considered. The deed from Ayers and wife to Garrison conveys the lot and *building*.   But when Garrison and wife conveyed to the defendant, Annie E. Smith, then for the first time buildings are referred to and conveyed.   The other buildings evidently were erected after Ayers and wife sold to Garrison.

It would have been a very powerful circumstance tending to show the intention of the grantor and the falsity of the particular description, if evidence had been adduced showing that a certain dwelling house, for instance, or other building had been conveyed to Ayers and Garrison by Scultatus and it had been further shown that this dwelling house was at the time of the conveyance located on the ten foot strip now here in controversy.

We are asked to infer that such was the case in the face of a total absence of evidence which must have been easily available if it existed.

The record is meagre, painfully so, but as it stands here we can see no error in the trial court's judgment.

It seems hardly necessary to add to what has been shown above as indicative of the grantor's intention. A great deal might have been shown in this case, which was not shown, and we might indulge in conjecture, and conceive a situation which is working an extreme hardship upon the defendant. For instance, a particular dwelling house might have been conveyed, and it m ght have been located on the ten foot strip, and the grantor might have been present when Ayers and Garrison located their lot and acquiesced in and agreed to the location, or he may have become acquainted with the location they made afterwards includ ng the ten foot strip and acquiesced in it; but the record shows none of these things, and so we must look to the deed and the situation of the parties, at the time of the execution of the deed, as revealed by the record, to ascertain their intention.

[16] From all the foregoing it clearly appears, we think, that the preponderance of the evidence, as disclosed by the record, is with the plaintiff. We have weighed the defendant's claim of title to the land in dispute in the balance and it has been found wanting. No error is shown in the judgment of the trial court to the prejudice of the defendant.

[17] In reference to the error of the trial court in rendering judgment for lot 21, and the ten foot strip in controversy, there being sufficient in the record before this court to enable it to render a proper judgment (*Albert* v. *Holt*, 137 Va. 5, 119 S. E. 120), the judgment will be amended so as to exclude lot 21 from recovery by the plaintiff and to include the ten foot lot in controversy, and as amended will be affirmed.

*Affirmed.*

CHRISTIAN, J., dissenting:

On the 30th day of September, 1907, The Ocean V ew Cottage Company, that owned a tract of land in Norfolk county which it had surveyed, platted and recorded a copy of the plat pursuant to section 2510-a of the Code of 1904, by deed, in consideration of $450.00, conveyed to W. J. Scultatus three fifty-foot lots, numbered 19, 20 and 21, in block No. six (6), as shown and designated on its plat duly of record in Norfolk county court, in map book No. 5, page 24.   On the 16th day of February, 1909, Scultatus, in consideration of fifteen hundred dollars, by deed conveyed to Dawber "all that certain lot, piece or parcel of land, *with buildings and improvements thereon*   *   *   *   known, numbered and designated on the plat of Ocean View Cottage Company   *   *   *   as the western thirty feet of lot number nineteen in block six, the portion of said lot hereby conveyed fronting thirty feet on Ocean View avenue and running back one hundred and fifty feet between parallel lines."   On the 19th day of February, 1909, Scultatus, in consideration of fifteen hundred dollars, by deed conveyed to Lavenstein "all that certain piece or parcel of land, with the buildings and improvements thereon   *   *   *   known, numbered and designated on the plat of Ocean View Cottage Company   *   *   * as the eastern twenty feet of lot number nineteen and the western ten (10) feet of lot number twenty in block six being more particularly described as follows:   Beginning at a point on Ocean View avenue, at the eastern line of the property of G. T. Dawber, etc."

On the 16th day of June, 1910, Scultatus, in consideration of the sum of twelve hundred and fifty dollars and other considerations, by deed conveyed to Ayers and Garrison "all that certain lot, piece or parcel of

land with the buildings and improvements thereon, situated in the county of Norfolk, State of Virginia, and known, numbered and designated on the plat of Ocean View Cottage Company, duly recorded in the clerk's office of the Circuit Court of Norfolk county, in map book 5, page 24, as the eastern thirty (30) feet of lot numbered twenty (20) in block six (6), being more particularly bounded and described as follows: Beginning at a point in Ocean View avenue at the eastern line of the property of H. H. Lavenstein and running thence along Ocean View avenue thirty feet, thence southwardly in a line parallel to the eastern line of H. H. Lavenstein, one hundred and fifty (150) feet, thence westwardly in a line parallel to Ocean View avenue thirty feet to H. H. Lavenstein's line, thence northwardly along H. H. Lavenstein's line one hundred and fifty (150) feet to the beginning." Ayers conveyed his undivided one-half interest in the lot purchased to Garrison by deed with the same description as contained in the original deed, and on the 30th day of September, 1919, Garrison by deed conveyed to Annie E. Smith the said lot. On the 26th day of June, 1919, Scultatus, in consideration of ten dollars and other valuable considerations, by deed conveyed to Bailey "all that certain lot and part of lot   *   *   known and designated as lot twenty-one (21) and the adjoining ten (10) feet of lot twenty (20) in block No. six (6) as shown on the plat or plan of the property of the Ocean View Cottage Company, etc."

Each and every one of the deeds referred to the deed from Ocean View Cottage Company to Scultatus which conveyed the lots to him by numbers and reference to the plat, and his deeds to each of his grantees conveyed the lots by numbers and reference to the duly recorded plat which section 2510-a, Code of 1904, made the de-

scription and lines on the plat conclusive boundaries and binding on all the parties to said deeds.

Where reference is made in a deed to a recorded plat, evidence in an action of ejectment to show that the recorded plat thus referred to differed from the original plat is inadmissible. Until reformed by bill in equity, *the description* given in the deed by reference to the recorded plat is conclusive upon the parties. *Jones* v. *Johnston*, 18 How. (U. S.) 150, 15 L. Ed. 320.

On the 6th day of March, 1922, Bailey filed his declaration in ejectment against Annie K. Smith to recover the sixty feet of land purchased from Scultatus, notwithstanding the fact that Smith and her predecessors in title had never had or claimed title to any part of lot 21, and had been in possession of the eastern thirty feet of lot twenty under a valid deed for twelve years, which included the ten feet claimed by Bailey, and upon which was located her porch, outhouse, and an old fence on the boundary line between lots 20 and 21 which latter overlapped the line in the rear only four inches. The case was submitted to the court without a jury, on the law as laid down in the chancery suit of *State Savings Bank* v. *Stewart*, 93 Va. 447, 25 S. E. 543, which was a suit to enforce the lines upon the lots.

The facts in that case are as follows: Stewart conveyed two lots in Roanoke city and described them particularly by courses and distances as located on "Trout avenue and I streets," and also referred to the lots by numbers on the recorded plat, which made the description on the plat as much a part of the deed as if copied therein; this plat showed the lots located on "Trout avenue and H streets." The grantor took a cotemporaneous deed of trust with the same descriptions to secure the balance of the purchase money. The parties when they came to apply the description

by courses and distances to the subject matter on the ground, discovered the mistake, and the grantor executed another deed correctly describing the lots, and setting forth that the corrected deed applied to the deed of trust also, but no new deed of trust was taken. Subsequently a creditor's suit was brought in which the State Savings Bank claimed that the deed of trust securing Stewart was null and void on account of the false description contained therein locating the lots on I street instead of H street. The court rejected the false description by courses and distances, and held, referring to the description by plat: "This remaining description (Nos. 9 and 10, section 5, of the west end map) is explicit and clearly sufficient to fully identify the lots intended to be conveyed;" that the deed of trust was valid, and that Stewart had the first lien on the lots. This case was an application of the maxim, *"Falsa demonstratio non nocet, cum de corpore constat"*— a false description does not vitiate, if a sufficient description remains to ascertain its application to the *subject matter.*

Can there be a more perfect and explicit description of the lot in controversy than the eastern thirty feet of lot 20 in block six on the plat of Ocean View Cottage Company?

"It is also a cardinal rule in the construction of all writings, *that the intention of the parties*, where it can be obtained from the *instrument itself*, will prevail unless counteracted by some positive rule of law. 2 Devlin on Deeds, section 836. The expositor, as was said by a learned judge, should place himself in the position occupied by the parties at the time the instrument was executed; then taking it by its four corners, read it." *Johnson* v. *McCoy*, 112 Va. 580, 582, 583, 72 S. E. 123, 124.

Taking the Ayers deed by its four corners and reading it, the intention of the parties is explicit, to convey "the eastern thirty (30) feet of lot numbered 20" (containing fifty feet) "in block six (6)," on the plat of Ocean View Cottage Company, "being more particularly bounded and described as follows." What is "more particularly bounded and described" but the eastern thirty feet of lot numbered twenty, which was distinctly and explicitly conveyed above? No evidence could make this plainer, and the law will not permit any evidence to be considered, whether excepted to or not, which contradicts this plain intent.

The plaintiff realizing that the law would not permit him to contradict the plain intent of the deed, as expressed therein, conceived the idea that the law in reference to false and correct descriptions of the same lot in the deed applied to this case, and undertook to make his facts fit the law rather than the law the facts, and instead of proving that the description contained in the plat did not conform to the lot on the ground *as required by law to make* a description false, he undertook to prove by extraneous testimony that the description, "the eastern thirty feet of block six," on the plat was false on the ground, because the grantor also used in the deed the courses and distances beginning at Lavenstein's line, without proving that the Lavenstein line had even been established on the ground, or there was such line, hence the grantor intended the latter description, in absolute disregard of the *intention of the* grantees and the fact that they had located their lot by the description accurately and been in possession of the same for twelve years. Greenleaf Ev. (15th ed.), section 301.

The plaintiff, assuming that the law in reference to false and correct descriptions was applicable to his case,

filed in evidence his own deed which showed that he had purchased with reference to the plat of the Ocean View Cottage Company (a copy of which plat was also filed, that showed the lines, courses and distances of lots 20 and 21, fronting fifty feet each on Ocean View avenue), and also the deed to Ayers, which, without doubt, ambiguity or mistake of description, conveyed and the grantees purchased "the eastern thirty (30) feet of lot number 20," "known, numbered and designated" on the same plat with the western boundary as Lavenstein's line. *Instead of "applying the instrument to its subject matter,"* as proving that there was no such lot, or that the grantor owned no such lot, he introduced the deeds of Dawber and Lavenstein with the Kirk survey of lots 19 and 20, which deeds were no part of and had no relation to the deeds of Bailey or Ayers. Neither the Kirk survey nor any evidence in the case showed where the Lavenstein line was located *except the defendant swore that her western line was known as the Lavenstein line,* or that the Dawber or Lavenstein lines had never been established so as to be bases of description for any other lot.   He then proceeded to subtract from the fifty feet in each of the lots 19 and 20, as shown on the recorded plat, thirty feet sold to Dawber and thirty feet sold to Lavenstein, as shown on paper, which left forty feet in lot 20, and as the grantor sold Ayers only thirty feet in lot 20, "the *eastern* thirty (30) feet of lot 20," shown upon the recorded plat, *was false;* and claimed the parties, in face of language as plain as it is possible to declare their intention, contracted not for the eastern thirty feet of lot 20, but for thirty feet from Lavenstein's line that is neither shown on any map or plat or on the land, and is only in existence on paper by calculation.   No authority has been or can be cited that where in ejectment it is claimed the boun-

dary lines contain more land than the parties intended
to convey, the boundaries can be changed.   *Mistakes
in the quantity of land conveyed can only be corrected in
equity upon proof of mutual mistake.*

The court on consideration of this evidence rendered
judgment for Bailey for the full sixty feet conveyed to
him, when his proof showed Smith only claimed and
held ten feet.   The defendant made a motion for a new
trial, which the court overruled and the case is before
us for error.

Section 5476, Virginia Code, 1924, provides:   "When
the right of the plaintiff is proved to all the premises
claimed, the verdict shall be for the premises generally
as specified in the declaration, but if it be proved to
only a part or share of the premises, the verdict shall
specify such part particularly as the same is proved,
and with the same certainty of description as is re-
quired in the declaration."

This section is mandatory, and it is reversible error
for a trial court to render judgment on a verdict that
fails to comply with its requirements.   *Grizzle* v. *Davis*,
119 Va. 567, 89 S. E. 870.

Only the eastern ten feet of lot twenty was in issue in
this case, nor was there any proof that the defendant,
Smith, withheld any  part of lot twenty-one from
Bailey, so that the defendant's motion to set aside the
judgment should have been granted, and as the judg-
ment is plainly erroneous the same must be reversed
and annulled.

Then, the matter presented to this court for deter-
mination is, what judgment should be rendered pur-
suant to Virginia Code, section 6365, *"to attain the ends
of justice?"*

This is an action in ejectment between coterminous
owners, and the deed upon its face shows that Scultatus

conveyed to Ayers and Garrison, the grantors of Annie
K. Smith, "the eastern thirty (30) feet of lot numbered
twenty (20) in block six (6)," "on the plat of Ocean
View Cottage Company, duly recorded in the clerk's
office of the Circuit Court of Norfolk county, in map
book 5, page 24," which description, pursuant to sec-
tion 2510-a in reference to recorded plats, and the uni-
form decisions of the Supreme Court of Virginia and of
the United States when deeds refer to plats for de-
scription, is as particular, complete and conclusive as it
was possible to make. The draftsman of the deed,
unmindful of the law, unnecessarily injected into the
deed another particular description of the same lot
*with Lavenstein's line as the western boundary of the lot*
by courses and distances without termini. That the
description by reference to the plat met all the require-
ments of law, and is free from ambiguity, is established
by the fact that the grantees, respectively, took posses-
sion of the lot as thus described and had held it for
twelve years prior to the bringing of this action of
ejectment. The law presumes possession in the owner
of land until the contrary is proven. Possession of
real estate at common law is notice of the claim of the
possessor, and affects parties dealing with it with
knowledge of all facts that inquiry would reveal.
*Chapman* v. *Chapman*, 91 Va. 397, 21 S. E. 813, 50
Am. St. Rep. 846. Hence Scultatus was estopped to
claim a mistake or misdescription in the deed, nor does
Bailey stand in any better situation than his grantor as
he had conclusive notice from the recorded deed, which
notice makes the rule of law in reference to possession,
as set forth in the *Chapman Case*, applicable to him by
virtue of Virginia Code, 1904, section 2465; Virginia
Code, 1924, section 5194. With the knowledge derived
from the deed and the twelve years' possession of the

defendant and her predecessors in title, upon what principle of law or equity can Bailey ask a court of justice to take the ten feet of land, with the porch and outhouses, from the defendant and give it to him?

In ejectment, the plaintiff must recover upon the strength of his own title, and not upon the weakness of the defendant's title. *Kinney* v. *Daniel*, 90 Va. 702, 19 S. E. 880. No infirmity in the defendant's title can supply defects in proof on the part of the plaintiff. *Carter* v. *Wood*, 103 Va. 69, 48 S. E. 553.

Smith certainly has the older title from the common grantor, and the ten feet in controversy is certainly located within the eastern thirty feet of lot 20, as shown by the plat, and the plaintiff in ejectment can not assert that her western line was ten feet from the line of lot 19, instead of twenty feet, as called for in her deed, and thus make her deed convey the eastern thirty feet of lot twenty, except ten next to lot 21. *Gutshall* v. *Hamilton*, 134 Va. 416, 114 S. E. 595. Conceding, however, that there are two contradictory descriptions of this lot, the matter for decision is, shall the description by plat which conveys the *eastern thirty feet of lot 20*, prevail over the western and unestablished boundary of Lavenstein's line, with which latter Bailey has no concern.

If there are two equally explicit descriptions of the lot contained in the Ayers deed, it is not necessary to cite authority for the law that the deed will be construed most strongly against the grantor and his subsequent grantee, in favor of the prior grantees; but the court construed the deed most strongly against Smith, because there was ten feet of land between the undetermined Lavenstein line and the *eastern* thirty feet of lot twenty, as she clearly purchased.

To sustain the judgment in favor of the plaintiff in

this action of ejectment, it is claimed that while the description is double, the eastern thirty feet of lot 20 in block six, on the recorded plat, is a general description, and beginning at Lavenstein's line is a particular description; and the following rule laid down by Mr. Justice Parke, in *Smith* v. *Galloway*, 5 B. & Ad. (Eng.) 43, 51, is invoked: "The rule is clearly settled that where there is a sufficient description set forth of premises, by giving the particular name of a close or otherwise, we may reject a false demonstration; but that if premises be described in general terms, and a particular description be added, the latter controls."

The case of *Gilbert* v. *McCreary*, 87 W. Va. 56, 104 S. E. 273, 12 A. L. R. 1172, is cited as authority in this case. This was a suit in equity to remove the cloud upon the title of the plaintiff growing out of the following provision in her father's will: "I give and bequeath to my daughter * * * the house and lot known as No. 114 Tenth street, lot sixty-six feet front on Tenth street by eighty feet on an alley parallel with Ann street, by thirty-six feet parallel with Ninth street, by sixty-three feet to Tenth street at place of beginning." The court decided that the intent of the testator was to give his daughter all the land used with No. 114 Tenth street, and disregarded the courses and distances.

This case and the rule of construction applied in *Smith* v. *Galloway*, *supra*, can have no application to this action in ejectment where the controversy is over the eastern boundary of lot 20, as the courts have uniformly held that the boundary shown on the plat is conclusive. Besides the eastern thirty feet of lot 20, in block 6, on the recorded plat are not general terms of description, but are held by the Supreme Court of Virginia and the statute law to be *explicit, particular and clearly sufficient* to fully identify the lot intended to be

conveyed on the ground. *Mathews* v. *Gillespie*, 137 Va. 648, 120 S. E. 324; *Edmunds* v. *Burrow*, 112 Va. 332, 71 S. E. 544.

"Where a map of land is referred to in a deed for the purpose of fixing its boundaries, the effect is the same as if copied into the deed, and what is therein (the plat) described will pass to the grantee." *Cox* v. *Hart*, 145 U. S. 376, 12 S. Ct. 962, 36 L. Ed. 741; *Jefferies* v. *The East Omaha Land Company*, 134 U. S. 178, 10 S. Ct. 518, 33 L. Ed. 872.

In the case of *Schwalm* v. *Beardsley*, 106 Va. 407, 56 S. E. 135, the plaintiff brought ejectment to recover a strip of land twelve feet long and thirteen inches wide upon which was a party wall between his lot and defendant's. The party wall was included in the courses and distances of plaintiff's lot, but the parties purchased their lots by reference to plat. The court held that the parties having purchased with reference to the plat which showed the party wall, the dividing line between the lots was the center of the party wall. "In surveys, course and distance yield to monuments, especially where called for in deeds."

In *McIver's Lessee* v. *Walker*, 9 Cranch (U. S.), 173, 3 L. Ed. 694, it was held: "If there is nothing in a patent to control the call for course and distance, the land must be bounded by the courses and distances of the patent according to the magnetic meridian. All lands are supposed to have been actually surveyed, and the intention of the grant is to convey the land according to the actual survey. If a patent refer to a plat annexed, and if in that plat a water course be laid down as running through the land, the tract must be so surveyed as to include the water course and to conform as near as may be to the plat, although the lines run do not correspond with the courses and distances mentioned in the patent."

In *Mahoney* v. *Friedburg*, 117 Va. 520, 85 S. E. 581, which was a controversy over the accretions from Smith's creek, the defendant purchased by reference to a plat which showed the line of his lots along the low water line of the creek. The court held: "The language of a deed is to be taken most strongly against the grantor, and when a lot is described as on a map or plat, to which reference is made, such map or plat becomes, for the purpose of description, a part of the deed, and has the same effect as though it were incorporated into the instrument." The accretions were the property of defendant.

The case of *State Savings Bank* v. *Stewart, supra,* decided: "If two descriptions be given, each equally explicit but repugnant to each other, that description will prevail which the whole deed shows best expresses the intention of the parties, and where a map of land is referred to in a deed for the purpose of fixing *its boundaries*, the effect is the same as if it were copied into the deed."

The plat of the Ocean View Cottage Company, by which the land was conveyed to Smith, makes the line between lots 21 and her lot the explicit and conclusive boundary, as definite as if it was a stone wall. It would seem from the decisions to be well established that the boundaries upon a plat prevail over contradictory courses and distances contained in the deed.

"The object in cases of this kind is to interpret the instrument, that is, to ascertain *the intent of the parties.*" The rule to find the intent is to give most effect to those things about which men are least liable to mistake. *Davis* v. *Rainsford*, 17 Mass. 210; *McIver* v. *Walker,* 9 Cranch (U. S.) 178, 3 L. Ed. 694. On this principle, the things usually called for in the grant, that is, the things by which the land granted is described, have been thus marshalled: First, The highest regard is

had to natural boundaries. Secondly, To lines act-
ually run, and corners actually marked. Thirdly, If
the lines and courses of an adjoining tract are called for,
the lines will be extended to them, *if they are sufficiently
established*, and no departure from the deed is thereby
required; marked lines prevailing over those which are
not marked. Fourthly, To courses and distances;
giving preference to the one or the other according to
circumstances. *Dogan* v. *Seekright*, 4 Hen. & Munf.
(14 Va.) 125; *Preston* v. *Bowmar*, 6 Wheat. (U. S.) 580,
5 L. Ed. 336; Greenleaf Ev., (15th ed.) section 301,
note 9.

In *Dogan* v. *Seekright, supra*, the court laid down this
further rule: "Where, in a grant or deed, courses and
distances *only are mentioned*, beginning from a certain
point, but not referring to any certain point for termi-
nation otherwise than reference to the distance, accord-
ing to the course prescribed; in such cases courses
and distances as expressed in the deed are only to be
regarded, unless an actual survey duly authorized be
proved to be subsequently made, according to the
courses and distances prescribed by the deed."

"If the description is ambiguous or doubtful, parol
evidence of the practical construction given by the
parties, *by acts of occupancy*, recognition of monuments
or boundaries, *or otherwise*, is admissible in aid of the
interpretation." *Stone* v. *Clark*, 1 Met. (Mass.) 378,
35 Am. Dec. 370.

*If the deed is construed according to law*, the quantity
of land and courses and distances from Lavenstein's
line cannot be given any weight or value whatever.

Bailey is asserting "an unfounded claim of title,
based (hardly) upon a semblance of a paper title"
(*Holland* v. *Challen*, 110 U. S. 151, 3 S. Ct. 495, 28 L.
Ed. 52), and judgment should be entered in favor of
Annie E. Smith, the defendant in the lower court.