# Richmond.

## OBERDORFER & AL. V. MEYER & AL.

### November 5th, 1891.

1. FRAUDULENT SALES—*Bona-fide purchasers.*—The doctrine is now established that, though owner is fraudulently induced to sell his goods, yet the sale passes the title, and that vendor, on discovering fraud, may disavow the sale and reclaim the goods, provided they have not passed into the hands of a *bona-fide* purchaser.

2. IDEM—*Trust deed—Creditors.*—Where goods fraudulently purchased are conveyed by vendee to secure his creditors, who, as well as the trustee, are unaware of the fraud;

HELD:

The trust deed will not be annulled at the suit of the vendors.

Appeal from a decree of the hustings court of the city of Staunton, rendered June 9th, 1890. The bill was filed by the appellees, Meyer, Reinhardt & Co., for an injunction and a receiver, and to set aside, on the ground of fraud, a certain deed of trust executed by the defendant, M. B. Oberdorfer, to William E. Craig, trustee, to secure the payment of certain debts therein mentioned and classified. It is charged in the bill that on the 12th of March, 1888, Oberdorfer, who was doing business as a retail clothier in Staunton, visited the store of the complainants, wholesale dealers in Baltimore, to buy goods; that while there he represented to the complainants, for the purpose of obtaining credit with them, that his business was in good shape, that he owed his father, B. Oberdorfer, nothing, and that he was worth $7,000 or $8,000 dollars over and above all his liabilities. It is also charged that these rep-

resentations were false and fraudulent, and made with intent to defraud the complainants, who, relying on them, sold and delivered to him goods on credit to the amount of $3,084.

The bill then states that on the 24th of April following, he made a deed of assignment, whereby he conveyed his entire estate, including all of his goods and stock, to Craig, trustee, to secure sundry creditors, whose debts, as stated in the deed, amounted in the aggregate to over $25,000, which was more than double the value of his estate; that of these debts several, which are specified, are voluntary, and that the deed was made with intent to hinder, delay, and defraud the complainants and others of his creditors. The bill also con'ains the following clause :

" Your orators are advised that inasmuch as they parted with their goods, and the said M. B. Oberdorfer obtained possession of them, by means of fraudulent misrepresentations, they cannot be said, in law, to have parted with their title to the same, and are entitled to recover them, no matter whether in the hands of innocent purchasers or not."

The defendants answered, denying the charge of fraud, or that there was any collusion between the grantor and the trustee or beneficiaries in the deed.

The cause was thereupon referred to a commissioner to ascertain and report, among other things, (1) whether the deed was void, in whole or in part, on the ground of fraud at the date of its execution; (2) the amount due each of the secured creditors, and the consideration, if any, therefor; and (3) how much of the assigned goods represented the complainants' debt.

The commissioner, in obedience to this decree, reported, after a mass of evidence had been taken, that the deed was valid *in toto*, and that the debts assailed as voluntary were *bona fide*, to which report the complainants excepted. The

court, without passing on the report in any other respect, sustained the first exception, which related to the validity of the deed, and from that decree the trustee and certain of the secured creditors obtained an appeal.   Opinion states the case.

*A. C. Gordon,* for appellants.

*A. C. Braxton* and *George M. Cochran,* for appellees.

Lewis, P., delivered the opinion of the court.

It is clear from the evidence that the complainants' goods were obtained by fraud, as charged in the bill; and if this were a contest between them and the fraudulent buyer alone, their right to reclaim the goods would be unquestionable. But, unfortunately for them, rights of innocent third persons have intervened, which presents a very different case; for the doctrine is now established both in England and Virginia that a sale of goods, although the owner has been fraudulently induced to make it, passes the title to the vendee.   The contract, however, in such a case is voidable, at the election of the vendor, as against the vendee, but not a subsequent *bona fide* purchaser for value; that is to say, the vendor, on discovery of the fraud, may disaffirm the contract and reclaim the goods, provided they have not passed into the hands of a *bona-fide* purchaser.

The latter buying, as he does, without notice of the fraud, is protected on the principle that when one of two innocent persons must suffer by the fraud of a third, the loss shall fall on him who has enabled such third person to do the wrong.   1 Benj., Sales (6th Am. ed), sec. 648.; *Williams* v. *Given,* 6 Gratt. 268; *Wickham* v. *Martin,* 13 *Id.* 427; *Old Dominion S. S. Co.* v. *Burkhardt,* 31 *Id.* 664; *Donaldson* v. *Farwell,* 93 U. S. 631.

The case of *Wickham* v. *Martin* is much like the present. There an insolvent merchant, fraudulently misrepresenting his

pecuniary condition, purchased goods not intending to pay for them, and afterwards conveyed them in trust for the benefit of creditors, the trustee, and beneficiaries in the deed having no notice of the fraud. This court decided that the trustee, as an innocent purchaser, took an indefeasible title, which entitled him to recover the value of the goods in an action of trover against the original vendors, who, after the date of the deed, had obtained possession of the goods.

This principle is decisive here; for there is no proof, nor is it even charged, that the trustee or beneficiaries in the deed had notice of the fraud by which the purchase of the goods was effected; nor is it proved that they were privy to, or colluded with the grantor in accomplishing, a fraud, if, in fact, there was any such design on his part when the deed was executed. So that the case is not within the condemnation of the statute of fraudulent conveyances, which enacts expressly that nothing therein shall affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. Code, § 2485; 2 Min. Insts. 602; *Paul* v. *Baugh*, 85 Va. 955; *Jones* v. *Christian*, 86 *Id.* 1017.

It is true the deed was drawn by Craig, the trustee therein, and after, as counsel of the grantor, he had made an examination into his affairs. But nothing, for aught the record shows, was disclosed by that examination sufficient to charge him with notice of any fraudulent intent, if any such existed. He soon discovered, as he testifies, that the grantor was, and for some time had been, insolvent; but that circumstance was in itself no bar to a valid assignment, with preferences as between creditors. He also knew, when he drew the deed, that the remnant of the goods which had shortly before been purchased from the complainants was embraced in the assignment, and that the goods had not been paid for. But that circumstance does not vitiate the deed, especially as he knew nothing of the

circumstances under which the goods had been purchased. Nor was there anything to justly awaken suspicion or to put a reasonably prudent man on further inquiry as to the *bona fides* of the debts due the grantor's father and brother-in-law, respectively, and which were put in a preferred class. In fact, they have since been reported by the commissioner as *bona fide*, and the question has not as yet been passed on by the lower court.

The trustee, moreover, testifies that the grantor was averse to making an assignment; that he tried, but without success, to borrow money with which to tide over his embarrassment, and that he consented to make an assignment only after his real situation had been fully explained to him. He says further, that the season being late, cold, and wet, he (the grantor) was disappointed in making sales sufficient to meet his obligations, which were then about to fall due, for goods purchased the previous year, and that he advised him that unless an assignment was made, his friends who had loaned him money would be "left out in the cold," and that he ought to protect them in preference to other creditors. Pursuant to this advice, he says, the assignment was made.

In short, we are of opinion that the alleged invalidity of the deed is not established by the evidence, and that, to this extent, the decree must be reversed.

DECREE REVERSED.