## CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
## AND JAMES CITY COUNTY

Middlesex County et al.

v.

Jack Hamilton, d/b/a
Hamilton's Book Store

### June 29, 1992

### Case No. 8510

BY JUDGE WILLIAM L. PERSON, JR.

Petitioners, Middlesex County, the Clerk of the Circuit Court for Middlesex County, and the Virginia State Librarian (intervenor), seek possession of 81 documents previously lodged at a book store owned and operated by Respondent, Jack Hamilton. The Virginia Public Records Act (VPRA), embodied in §§ 42.1–76 through 42.1–91 of the Virginia Code, provides authority for both the seizure and return of public records not in authorized possession.

Hamilton owns and operates Hamilton's Book Store, a used and rare bookshop located in Williamsburg, Virginia. On January 14, 1991, Hamilton purchased the 81 documents at question from Joe Killen of Williamsburg. Killen had purchased them in 1973 or 1974

while at an outdoor paper fair in Florida. After researching and cataloging the documents, Hamilton brought them to the attention of friends at the Urbanna Library in Middlesex County. Middlesex Supervisor, David Gill, and Virginia State Archivist, Louis Manarin, made an appointment to view the documents on February 11, 1991. That same day, an order issued for seizure of the documents under the VPRA, and they were subsequently seized by the Sheriff of James City County. On February 11, 1991, Middlesex also petitioned for the return of the documents under the VPRA.

The Court is asked to decide two questions. First, whether the return and seizure provisions of the VPRA meet constitutional standards, and second, whether the 81 documents seized are public records. The Court finds that §§ 42.1–89 and 42.1–90 of the Virginia Public Records Act are constitutional and that the 81 documents consist of both private and public records. The Court further finds that the documents identified as exhibits A-2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 17, 18, 20, 21, 22, 35, 36, 37, 38, 39, 40, 41, 43, 45, 47, 48, 49, 50, 51, 53, 54, 55, 65, 66, 67, 68, and 79 are public records and should be delivered to Petitioners and that the documents identified as exhibits A-1, 5, 10, 15, 16, 19, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 42, 44, 46, 52, 56, 57, 58, 59, 60, 61, 62, 63, 64, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 80, and 81 are the property of Jack Hamilton and should be delivered to him accordingly.

The Fifth Amendment of the United States Constitution proclaims that private property shall not be taken for public use without just compensation. U.S. Const., Amend. V. This principle is applied to the states through the Fourteenth Amendment. *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 310, n. 4 (1987). The Virginia Constitution states that no law shall be passed whereby private property shall be taken for public use without just compensation. Va. Const., Art. I, § 11. The VPRA does not provide for the taking of private property, it simply demands that materials are returned to the Commonwealth and proper custodians upon a determination that they are public records.

Public records are the property of the state. *Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881 (1874). Respondent pleads that Petitioners' action for the return of public records has been barred by the statute of limitations. "No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar

to any proceeding by or on behalf of the same." Va. Code Ann. § 8.01–231 (Michie Supp. 1991). Because the statute of limitations will not apply to the Commonwealth, it will not apply to the Virginia State Library, an agency of the Commonwealth. *Bouldin v. Commonwealth*, 4 Va. App. 166, 355 S.E.2d 352 (1987) (exempting the Division of Motor Vehicles from a statute of limitations via § 8.01–231).

The VPRA authorizes the "State Librarian or his designated representative . . . or any public official who is the custodian of public records" to petition the circuit court for the return of public records. Va. Code Ann. § 42.1–89 (Michie 1990). The court must determine who the real parties in interest are based on the facts of the case and not merely the name in which the action is brought. *Eastern State Hospital v. Graves' Committee*, 105 Va. 151, 153, 52 S.E. 837 (1906). As custodians of public records, Middlesex County, together with the Clerk of the Circuit Court for Middlesex County, and the Virginia State Librarian are bringing suit on behalf of the Commonwealth's right to possession and ownership of all public records. Because the suit is on behalf of the Commonwealth, no statute of limitations will bar the action. Va. Code Ann. § 8.01–231 (Michie Supp. 1991). Petitioners' exemption from the statute of limitations defeats Hamilton's plea that this action has been barred.

Just as Hamilton has no statute of limitations defense, he is not shielded by a good faith purchaser doctrine. One who has no title to personal property can transfer none, nor does a good faith purchaser for value without notice acquire title against a rightful legal claimant. *First Nat. Bank v. Johnson of Waynesboro*, 183 Va. 227, 236, 31 S.E.2d 581 (1944); *see also* Va. Code Ann. § 8.2–403 (Michie 1991) (the Virginia Comment). Because Hamilton has neither a statute of limitations nor a good faith purchaser defense, those documents determined to be public records are the property of the Commonwealth, not privately owned, and are therefore not afforded protection by the United States and Virginia takings clauses.

Those documents that are not public records will be returned to Hamilton and will not be taken for public use. When property is seized by the government for a purpose other than a public use, the seizure is covered by due process protections rather than takings provisions. *See San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 656, n. 23 (1981) (Brennan, J., dissenting).

The Virginia Public Records Act contains an ex parte seizure provision. Va. Code Ann. § 42.1–90 (Michie 1990). Hamilton contends

that this provision violates his right to due process. The Fourteenth Amendment prohibits the states from depriving "any person of . . . property, without due process of law." U.S. Const., Amend. XIV. The United States Supreme Court due process cases have established a two-part inquiry for ex parte seizure cases. First, the property interest concerned must be within the scope of the Amendment; and second, the procedures prescribed or applied must satisfy the due process "fairness" standard. *Klimko v. Virginia Empl. Comm'n*, 216 Va. 750, 754, 222 S.E.2d 559 (1976), *cert. denied* 429 U.S. 849 (1976).

Property interests protected by the Fourteenth Amendment extend beyond actual ownership to include possessory interests. *Fuentes v. Shevin*, 407 U.S. 67, 84 (1972). Hamilton had possession of all the documents seized, and he owns those documents which are not public records. Hamilton's possessory and ownership interests are within the scope of the Fourteenth Amendment, and he must be afforded due process.

Hamilton claims that due process requires a pre-seizure hearing, and therefore, the VPRA is unconstitutional as written and as applied. In *Mitchell v. W. T. Grant Company*, a case concerning writs of sequestration, the Supreme Court clarified the pre-seizure hearing requirements arising from the series of cases that culminated in *Fuentes*. The Court stated, "[T]hey merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pre-termination hearing where a full and immediate post-termination hearing is provided. *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 611 (1974). The Virginia Public Records Act provides for ex parte seizure only if a petition for the return of the documents has been filed under § 42.1–89 or is filed contemporaneously and only upon receipt of an affidavit alleging that the materials may be removed or damaged. Va. Code Ann. § 42.1–90 (Michie 1990). On February 11, 1991, Middlesex filed its petition, affidavit, and petition for seizure. That same day the documents were seized. Within two weeks there was a hearing, with Hamilton in attendance, regarding the seizure, and by May 17, 1991, the hearings to determine ownership of the documents had begun. Hamilton was afforded full and immediate post-seizure hearings.

The "fairness" inquiry requires a balancing of the parties' interests. *Klimko*, 216 Va. at 758. In this case the court must balance

Hamilton's interest in a pre-seizure hearing against Middlesex's interest in preventing the removal, sale, secreting, or damage of the subject of its suit. The Supreme Court has recognized that substantial state interests and emergency situations, such as potential damage or sale of the object, can outweigh an interest in a pre-seizure hearing. *Fuentes*, 407 U.S. at 92–93. This is especially true where property rights are at issue. "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate'." *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 611 (1974).

Section 42.1–90 requires an affidavit noting an emergency situation for an ex parte seizure order to issue, and the requirement was met before the documents were seized. Petitioners' interest in preventing the destruction or secreting of the subject of its suit, together with the Petitioners' interest in preventing the loss of public records, outweighs Hamilton's interest in a pre-seizure hearing for mere property issues. Due process does not guarantee particular procedures, it protects substantial rights. *Mitchell*, 416 U.S. at 610. Section 42.1–90 of the Virginia Public Records Act, as written and as applied, has protected Hamilton's right to a full hearing.

Article I, Section 11, of the Virginia Constitution provides that "no person shall be deprived of his . . . property without due process of law." This section of the Constitution means that a person is entitled to reasonable notice and a reasonable opportunity to be heard before any binding decree can be passed affecting his right to property. *See Commission of Fisheries v. Hampton Rds. Oyster Packers & Planters Ass'n*, 109 Va. 565, 64 S.E. 1041 (1909); *Ward Lumber Co. v. Henderson-White Mfg. Co.*, 107 Va. 626, 59 S.E. 476 (1907); *Graham v. Mitchell*, 529 F. Supp. 622 (E.D. Va. 1982). The Virginia due process provision has not been interpreted as broader than that of the United States Constitution. *Leftwich v. Bevilacqua*, 635 F. Supp. 238, 243 (W.D. Va. 1986). VPRA § 42.1–90 meets the due process requirements of the United States Constitution, and Hamilton will have had full hearings before a binding decree is issued that affects his right to the documents. Hamilton's right to due process under the Virginia Constitution has not been violated. In order to prevail, Petitioners must prove, by a preponderance of the evidence, that each individual document is a public record. The current

statutory definition of "public record" is "something made or received in pursuance of law or in connection with the transaction of public business." Va. Code Ann. § 42.1–77 (Michie 1991). This definition was enacted in 1976. 1976 Va. Acts 746. A general rule for statutory construction is that legislation only speaks prospectively unless express provision or legislative intent say otherwise. *Booth v. Booth*, 7 Va. App. 22, 26, 371 S.E.2d 569, 572 (1988). Legislative intent that a statute apply retroactively may not control if such application would impair vested rights. *Booth*, 371 S.E.2d at 572.

The parties agree and the Court concludes that the common law definition of "public record" is contained in *Coleman v. Commonwealth*:

> [A public record] is "a written memorial made by a public officer authorized by law to perform that function and intended to serve as evidence of something written, said or done." . . . He must have authority to make it; but that authority need not be derived from express statutory enactment. Whenever a written record of the transactions of a public officer in his office is a convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept, it becomes a public document - a public record belonging to the office and not the officer; is the property of the state and not of the citizen and is in no sense a private memorandum.

*Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881 (1874). The VPRA definition of "public records" (made or received) is broader than the common law definition (kept), and therefore, to avoid a retroactive impairment of vested rights, the common law definition must guide the Court's determination of whether the documents in question belong to Hamilton or Petitioners.

The Court concludes that there are three ways in which the Petitioners can establish that a particular document is a public record and within the purview of the VPRA's return provision (§ 42.1–89). First, they can prove that a document is of a type that was required by statute to be kept. Second, they can prove that a particular document was kept and then wrongfully removed from its place of keeping. Finally, they can prove that a document fails within the *Coleman* definition of "public record."

Among the eighty-one documents at issue, only the will of Mary Atwood, exhibit number 19, is a type of document required by statute to have been kept in the clerk's office. Nevertheless, the will is dated 1698, and the first statute requiring that wills be kept by the clerk was enacted in 1711. 4 Hening's Statutes 12 (Chap. II, 1711). Therefore, statutory authority alone does not classify the will as a public record.

Possession is prima facie evidence of ownership up to the point where better title than bare possession gives is shown. *Smith v. Bailey*, 141 Va. 757, 127 S.E. 89, 95 (1925). Petitioners can show better title than bare possession by proving, by a preponderance of the evidence, that the documents had been kept in the clerk's office and were removed wrongfully. The expert testimony of Dr. Manarin and Mr. Hart yielded evidence that many of the documents were folded, bundled, and labeled in fashions indicating that they were kept and stored by the clerk. The Court, acting as factfinder, has considered and drawn reasonable inferences from the evidence and concludes that the evidence does prove that many of the documents entered the hands of the clerk, but absent a legal duty to keep the documents, the evidence does not establish that any of the documents left the clerk's office wrongfully.

The experts testified extensively on the historical custom and practice of keeping documents in the clerk's office. Although such testimony does provide evidence that the documents would have been kept with the clerk, custom and practice will not provide a presumption that the documents were kept by the clerk because customary law may not per se vest the right to ownership. *Delaplane v. Crenshaw & Fisher*, 56 Va. (15 Gratt.) 457, 475 (1860).

Hamilton objected to Petitioners' expert testimony on the basis that the witnesses were drawing inferences from inferences from inferences. Expert witnesses can render opinions or draw inferences from facts or circumstances. Va. Code Ann. § 8.01–401.1 (Michie 1984). Creases from folding, styles of indexing, and signs of bundling are all facts, and from such facts, the experts may testify as to whether the documents were in the hands of the clerk. The experts may not testify as to whether or not the documents are public records (kept and wrongfully removed) because such a conclusion would be the ultimate fact in issue and testifying to it would be an impermissible invasion of the function of the factfinder. *Bond v. Common-*

wealth, 226 Va. 534, 538, 311 S.E.2d 769, 771 (1984). Petitioners were unable to prove, by a preponderance of the evidence, that any of the documents were kept by the clerk and removed from the clerk's office wrongfully.

Those documents that fall within the *Coleman* definition of "public record" will be returned to Petitioners. Under *Coleman*, a public officer has a duty to keep written records of his transactions as a public officer if such records are a convenient and appropriate mode of discharging the duties of his office. When kept, the records become public documents belonging to the office and not the officer. Such records are the property of the state and not of the citizen and are in no sense private memoranda. *Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881 (1874). There is a rebuttable presumption that a public official performed his duty in accordance with the law. *Avery v. County School Board of Brunswick County*, 192 Va. 329, 335, 64 S.E.2d 767, 771 (1951). Therefore, the Court will presume that those documents which are records of transactions of public officers were kept in accordance with the common law duty.

## Accounts

Accounts were created by individuals empowered by and sworn to the court to administer estates. They were to be returned to the court as part of probate. *See* 2 Hening's Statutes 91 (Act LXV 1661–2) and 1 Shepherd's Statutes 88 (Ch. 30, 1792). Three of the accounts (# 4 Estate of Captain Oswald, # 6 Christopher Fisher's Estate, # 47 Estate of John Humphries) were recorded and have docketing as evidence that the documents were submitted to court as the record of a completed accounting. *Coleman* emphasizes a duty to keep the record, and *Avery* presumes the record was kept; therefore, documents # 4, # 6, and # 47 are to be returned to Petitioners.

Lidford's account of tobacco (# 23) was not recorded, and testimony revealed that it could have been made by a private individual under circumstances other than an estate administration. The preponderance of the evidence does not establish that the document is a public record; thus, it will be returned to Hamilton.

## Agreements

Agreements are private documents between private parties, and as they were not created by public officers as records of transactions,

there is no presumption that they were kept. Docketing and recordation merely show that the documents entered the hands of the clerk, not that they stayed there and were wrongfully removed. The agreements (# 15 Williamson and Johnson, # 44 Steptoe and Robinson, # 77 Hill and Lee) are to be returned to Hamilton.

### Appointments, Commissions and Nominations

Although appointments, commissions, and nominations were written by public officers, they could be and were given out to the individuals to be appointed. The fact that the documents are of a type given to private parties, coupled with the fact that they are currently in private possession, overcomes *Avery's* rebuttable presumption that the documents were kept by the clerk as a record. The appointment of Wood (# 42), appointment of Blakey (# 64), commission for Segar (# 81), and nomination for Segar (# 80) will be returned to Hamilton.

### Bills

The William Downing bill (# 10) is a memorandum of a transaction between private parties and docketing and a possibly related suit do not indicate, by a preponderance of the evidence, that the document was kept in and wrongfully removed from the clerk's office. The bill will be returned to Hamilton.

### Bonds

The bonds of the Escheator (# 65), Sheriff (# 66 and # 79), Warehouse Inspector (# 67), and Tobacco Inspector (# 68) are documents memorializing the governmentally mandated bonding of appointed officials. *See* 12 Hening's Statutes 158 (Ch. LXIII, 1785) (as security for performance of duties, escheator was bound to governor before the court). The bonds were created for the benefit of the government, and *Avery* provides a presumption they were kept in accord with *Coleman*. The bonds are to be returned to Petitioners.

### Charter

The Urbanna charter (# 3) was created by public officers as a record of their transactions in office. Land conveyances for the creation of towns were authorized by statute. *See* 3 Hening's Statutes 53 (Act VIII, 1691) (an act for ports); 3 Hening's Statutes 108 (Act I, 1692–93) (an act for suspending the execution of the act for ports); 3 Hening's Statutes 186 (Act X, 1699) (an act for confirming titles to

town lands). *Avery* provides a presumption that the public officers kept the records of their transactions in accord with *Coleman*; therefore, the charter is to be returned to Petitioners.

### Deeds of Emancipation, Indenture, Trust and Mortgage

Statutes required that deeds of emancipation be acknowledged in court and then recorded and redelivered to the parties so entitled. 11 Hening's Statutes 39 (Ch. XXI, 1782) (an act to authorize the manumission of slaves); 1 Shepherd's Statutes 84 (Ch. 28, subch. 8, 1792) (an act for regulating conveyances). *Avery* provides a presumption that the documents were redelivered into the hands of private parties as required. Accordingly, the emancipations of Daphne and James (# 56), Phoebe Morris (# 57), Robin Reeves (# 58), Reeves Murray (# 59), Maria Muse (# 60), Becky Murray (# 61), Jacob Murray (# 62), Charlotte Robinson (# 63), and Priscilla (# 70) will be returned to Hamilton.

Deeds of indenture, trust, and mortgage are private documents between private parties, and the Petitioners did not prove, by a preponderance of the evidence, that any of these deeds were kept in and wrongfully removed from the clerk's office. Accordingly, the indenture of Mary Jones (# 5) will be returned to Hamilton. A 1792 statute required that conveyances be acknowledged in court, recorded, and redelivered to the parties entitled to them. 1 Shepherd's Statutes 84 (Ch. 28, subch. 8, 1792) (An act for regulating conveyances). Those deeds written after 1792 are presumed returned under *Avery*; therefore, the deeds between Ware and Faulkner (# 69), Lee and Garrett (# 71), Hunton and Mason (# 72), Lee and Lee (# 73), Jones and Healey (# 74), Mullins and Jesse (# 75), Wormley and Tayloe (# 76), and Elgar and Palmer (# 78) will be returned to Hamilton.

### Inventories

Inventories were created by individuals sworn by the court to make true inventories for estate administrations and present them to the court. 2 Hening's Statutes 91 (Act LXV, 1661–62); 4 Hening's Statutes 12 (Ch. II, 1711); 5 Hening's Statutes 454 (Ch. V, 1748); 12 Hening's Statutes 140 (Ch. LXI, 1785); 1 Shepherd's Statutes 88 (Ch. 30, 1792). Those inventories that were returned to the court to serve as records of estate administrations are public records and are presumed to have been kept via *Coleman* and *Avery*. Such docu-

ments will be returned to Petitioners and include the inventories of Fisher (# 2), Ledford (# 7), Haselwood (# 8), Cary (# 9), Corgin (# 11), Parrott (# 12), Kittsail (# 13), Head (# 14), Robinson (# 17), Cary (# 18), Chowning (# 20), Cock (# 21), Tomson (# 22), Laughlin (# 36), Daniel (# 37), Kemp (# 38), Lee (# 39), Mitchell (# 40), Montague (# 41), Curtis (# 45), Humphries (# 48), Hunton (# 49), Berkeley (# 53), and Berkeley (# 54).

Six of the inventories will be returned to Hamilton because Petitioners did not prove, by a preponderance of the evidence, that the documents were returned to the court as a record of the inventory. The six include the inventories of Beverly (# 1), Bullman (# 16), Jones (# 24), Pursell (# 30), Pursell (# 31), and Pursell (# 32).

## Orders and Settlements

The settlement of Robert Longest's estate (# 43) and the settlement of Berkeley's estate (# 55) were part of court-ordered estate administrations, and both state that documents were returned to the court. The settlements are records made by individuals acting in an official capacity and, as such, give rise to the *Coleman* duty to keep and the *Avery* presumption that they were kept. Accordingly, both settlements will be returned to Petitioners.

The order for appraisal of the estate of John Humphries (# 46) and the order to appraise the estate of Edmund Berkeley (# 52) are both copies of original orders. Petitioners have not proven, by a preponderance of the evidence, that the documents were returned to the court as part of probate, nor have they shown that the copies were made for someone other than a private party. Both orders will be returned to Hamilton.

## Receipts

The receipt concerning the estate of Pursell (# 35) was recorded and states it was returned to the court. Therefore, the receipt was intended to be a record of the transactions of an individual appointed to administer an estate. As such, there was a duty to keep the document as illustrated in *Coleman*, and *Avery* provides the presumption that the duty was met. Document # 35 will be returned to Petitioners.

The remaining receipts do not bear any indication that they were returned to the court as records of estate administrations, and Petitioners have not proven, by a preponderance of the evidence, that the

documents were kept in and wrongfully removed from the clerk's office. The receipts signed by Pursell (# 25, # 26, # 27), signed by Skipwith (# 28), signed by Reid (# 29), from Thomas Laughlin (# 33), and from John Grymes (# 34) will be returned to Hamilton.

## Surveys

Both surveys were created by appointed officials pursuant to court decree, and both surveys were submitted to the clerk and recorded. *Coleman* illustrates the duty to keep such records, and *Avery* provides a presumption that they were kept. The survey of 680 acres (# 50) and the survey of 1962 acres (# 51) will be returned to Petitioners.

## Will

The will is dated 1698, and the first statute requiring that original wills be kept by the clerk was enacted in 1711. 4 Hening's Statutes 12 (Chap. II, 1711). The document has characteristics consistent with a draft, and Petitioners have not proven, by a preponderance of the evidence, that the document was kept in and wrongfully removed from the clerk's office. The will of Mary Atwood (# 19) will be returned to Hamilton.