# CIRCUIT COURT OF FAIRFAX COUNTY

Richard L. Adams, Jr.

     v.

State of Maine

February 22, 2008

Case No. CH 2005-5034

BY JUDGE R. TERRENCE NEY

This matter comes before the Court on Mr. Richard L. Adams' Complaint to quiet title to a 1776 Salem, Massachusetts Bay, broadside print of the Declaration of Independence. After the presentation of evidence and argument of counsel, the Court took the matter under advisement.

*Facts*

On July 17, 1776, the Executive Council of Massachusetts ordered that the Declaration of Independence be printed and distributed in the state to ministers to be read to their respective congregations and then delivered to the town and district clerks to be recorded in the respective town or district books "to remain as a perpetual Memorial thereof."

The entire Order reads as follows:

> Ordered, That the Declaration of Independence be printed; and a Copy sent to the Ministers of each Parish, of every Denomination, within this State; and that they severally be required to read the same to their respective Congregations, as soon as divine Service is ended, in the Afternoon, on the first Lord's-Day after they shall have received it: – And after such Publication thereof, to deliver the said Declaration to the Clerks of their several Towns, or Districts; who are hereby required to record the same in their respective Town, or District Books, there to remain as a perpetual Memorial thereof.

*See Joint Stipulation* 20.

Sometime thereafter, Ezekiel Russell, a private printer in Salem, Massachusetts, printed at least 250 broadsides[1] to distribute to the parishes within the 187 existing towns in Massachusetts, including Pownalborough, Massachusetts, which is now Wiscasset, Maine.[2] These Ezekiel Russell prints contained the Order of the Executive Council at the bottom of each print.

The Reverend Thomas Moore would have been the person to have received the broadside sent to Pownalborough, Massachusetts ("Pownalborough Print" or "print" or "broadside") and to have read it, or caused it to be read, to his congregation. In the upper right hand corner of the rear side of the print, this handwritten script appears: "For the R. Mr. Moer att Pownalborough and then the R. Mr. Moery att Booth Bay after." The parties agree that this statement in current usage is: "For the Rev. Mr. Moore at Pownalborough and then the Rev. Mr. Murray at Booth Bay after." Rev. John Murray was a pastor of a church in Booth Bay, Massachusetts, a town approximately eleven miles from what is now Wiscasset. *See Joint Stipulations* 25-26.

---

[1] The parties agree that broadsides were used in Colonial America for purposes such as advertisements, verse, and government documents. The parties also agree that it was a common practice for broadsides containing significant news to be read from the pulpit in local churches, because the percentage of the population attending church regularly was high and ministers were in fact viewed as a part of local governments. *See Joint Stipulation* 4.

[2] In 1776, what is now Maine was part of Massachusetts. The town of Pownalborough, Massachusetts, changed its name to Wiscasset in 1802, and became part of the State of Maine in 1820 when Maine separated from Massachusetts. *See Joint Stipulations 15 and 23*.

The following notation also appears on the rear side of the print: "To Mr. Ebenezer [sic] Bridge, Town Clerk. According to the Authority having read within the Proclamation, I return it to you to be Recorded as ye law directs. Thos. Moore. Pownalborough October 19, 1776."

In October 1776, the town clerk of Pownalborough was one *Edmund* Bridge. He recorded, by handwriting, the words of the Declaration of Independence into the official town book on November 10, 1776. The town record book was admitted into evidence as Defendant's Ex. 5.

The Order did not specify what was to become of the broadside after the clerk recorded it into the town book, and the parties presented no evidence of any law or order of Massachusetts, or later of Maine, requiring that it be kept by the town clerk.

Between 1776 and 1996, thirty-nine persons served as the town clerk of Pownalborough and Wiscasset, respectively.

In May 1995, Harold Moore, an auctioneer, found the Pownalborough Print in the home of decedent Anna Plumstead on Middle Street in Wiscasset, Maine. Ms. Plumstead's home was a duplex that she shared with her sister, Mildred Holbrook, until Ms. Holbrook's death in 1991. Ms. Plumstead and Ms. Holbrook were the daughters of Sol Holbrook, who was the Town Clerk of Wiscasset from 1886 until his death in 1929.

The folded up print was in the attic, in a box containing family receipts, minutes of a town meeting, and other papers. *See* Joint Stipulation, pp. 10-11. No other documents which might relate to the town were found.

On May 21, 1995, at an estate auction in Byfield, Massachusetts, Mr. Moore sold the Pownalborough Print to David O'Neal, who purchased it for $77,000.00 on behalf of a partnership between himself and Seth Kaller of Kaller Historical Documents, Inc. In 1999, Kaller Historical Documents acquired the full interest in the print.

Mr. Kaller testified that he exhibited and advertised the Pownalborough Print in New York City, in Macy's Harold Square, at Wall Street Rarities, and on his web site for several years. Brochures advertising the print were introduced as Plaintiffs Exhibits 20, 21, and 22. He testified that a card was placed beside the print, identifying it as an official printing ordered by Massachusetts to be distributed to ministers of all denominations and read to their congregations. The card indicated that the reverse side of the print contained docketing by Rev. Thomas Moore of Pownalborough, Massachusetts, when he sent the print to the town clerk. *See* Plaintiff's Ex. 19.

In December 2001, Mr. Kaller sold the Pownalborough Print to Simon Finch, a rare book dealer in London, England, for $390,000. Mr. Finch then sold it to Richard Adams for $475,000.

In 2004, the State of Maine, proceeding on behalf of the Town of Wiscasset and its predecessor, Pownalborough, sought to recover the Pownalborough Print, asserting it to be an official town record of Wiscasset. Mr. Adams filed this suit to quiet title to the print on the basis that he is a bona fide purchaser for value.

## Analysis

As a threshold matter, the parties disagree as to whether the law of Maine or the law of Virginia governs this case. The State of Maine argues that Maine law should apply, at least with respect to the issue of whether the Pownalborough Print is a public record, because the print was converted in the State of Maine, and therefore Maine is the place of the wrong.

Maine's assertion, however, presumes that the print was actually converted from the town clerk or the town clerk's records. Yet that is a key issue in this case. In any event, Virginia law still controls questions of procedure, burden of proof, and sufficiency of evidence. *See Vicars v. Atlantic Discount Co.*, 205 Va. 934, 938-39, 140 S.E.2d 667, 670 (1965) (holding that Virginia law controlled all questions of procedure, burden of proof, and sufficiency of evidence in a case involving a vehicle stolen and sold by a thief in the State of Georgia, but where the suit to recover the vehicle was brought in Virginia). More importantly, under Virginia law, Maine, as the nonpossessory party, bears the burden of proving that the print was converted from its rightful owner. *Saunders v. Greever*, 85 Va. 252, 289, 7 S.E. 391 (1888).

In Virginia, a conversion has been defined as "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (citing *Credit Corp. v. Kaplan*, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956))." [A]n action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Id.* (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 906 (1994)). Here, Maine must first prove that it or the towns of Pownalborough or Wiscasset held title to the print before this Court may find that a conversion of the print occurred.

## 1. *Ownership of Public Records*

The question of ownership of documents which may be public records has not been considered extensively in Virginia or elsewhere. Only one Virginia circuit court has addressed the issue. *Middlesex County v. Hamilton*,

28 Va. Cir. 283, 288 (City of Williamsburg and James City County 1992). In that case, the court set out a three point test by which a nonpossessory governmental entity can prove ownership of a document on the ground that it is a public record. First, the government may prove that the document is of a type that was required by statute to be kept. Second, it may prove that a particular document, though not required by statute to be kept, was in fact kept and then wrongfully removed from its place of keeping. Third, it may prove that the document fits the common law definition of a public record, meaning that the document is a written record of a public officer's transactions and became a public document because it was kept. *Id.* (relying on *Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881 (1874)).

### a. *Statutorily Required to be Kept*

The State of Maine introduced no evidence that any applicable statute in effect in 1776 required a state or town to retain broadsides generally or the Pownalborough Print specifically. In fact, the Order printed on the Pownalborough Print only requires that it be read by the ministers of each parish and then delivered to the town clerks so that the clerks could record the words into the town books. Maine did not argue or produce any evidence that the Order requiring the clerks to "record the [Declaration] in their respective Town, or District Books" meant anything other than a requirement that the clerks transcribe the words of the Declaration of Independence into the town book. Instead, Maine offered into evidence the town book which contains the words of the Declaration of Independence, which Maine argued that the town clerk must have recorded from the Pownalborough Print. Mr. Adams does not dispute that the town clerk had possession of the print at one time, at least for the recording of its words into the town book. Nothing in the Order or in any other order or statute required the town clerk to thereafter retain the broadside.

Maine's reliance on the Massachusetts' Bay Colony's Resolutions Number 687 and Number 689 is not helpful. Resolution Number 687 directed that a box of stated specifications be made and maintained in Boston, but the Resolution made no reference to other towns within the Colony. Resolution 689 did address towns specifically and provided for the retention of records of judicial proceedings, such as the fees to be paid by every plaintiff for cases tried and who would pay what fee to whom when parties resided in multiple towns. But Resolution 689 made no reference to general public records. As such, neither resolution addressed the general public records of a Massachusetts town.

Similarly, Maine's reliance on a 1774 Order that "Mr. Denny, Major Hawley, and Col. Whitcomb be a Committee to prepare a Bill providing for the safe keeping the Books and Records of the Original Proprietors of Lands, when incorporated into Towns or Districts" is also unhelpful.[3] Albert H. Whitaker, Jr., the former State Archivist for the Commonwealth of Massachusetts, Maine's expert witness, testified that land records were among the types of records typically kept by the town clerk. Yet he also testified that broadsides were not typically kept. In fact, Maine did not introduce any evidence of any order requiring any broadside to be kept, or evidence that any broadside had ever been kept.[4] Because the 1774 Order refers only to land records and not to broadsides, the Court finds it inapplicable here.

Similarly, even if the law of Maine applied to this case, Maine's reliance on the definition of "public records,"[5] first adopted by Maine in 1973, is misplaced for at least three reasons. First, "the general rule of statutory construction is that legislation only speaks prospectively," at least in the absence of express provisions or legislative intent which indicates that the legislation also applies retroactively. *Booth v. Booth*, 7 Va. App. 22, 26, 371 S.E.2d 569, 571-72 (1988). As such, in *Middlesex County v. Hamilton*, the court held that a will, which pre-dated the statute requiring the retention of the original will, did not fall within Virginia's definition of a public record. *Middlesex County v. Hamilton*, 28 Va. Cir. 283, 289 (1992); *see also Willcox v. Stroup*, 467 F.3d 409, 416 (4th Cir. 2006) (noting that an Act, which first

---

[3] *See* Defendant's Exhibit 38. The only other Order in Defendant's Exhibit 38 that appears to address the preservation of records or papers does so with regard to preserving only the letters and papers found in the home of the deceased Governor Hutchinson. This Order, by its very words, is irrelevant to this case.

[4] Much was made by Maine about the similar broadside of the Declaration of Independence found in North Yarmouth, Maine. Yet, in that case, although the broadside was found in North Yarmouth, it was not found among the town's files. It did have written on its reverse side the number 16, however, which exactly matched North Yarmouth's official indexing system. This made plain that the town clerk did actually index and purposefully maintain possession of the North Yarmouth print. Such is not the case here.

[5] Maine has defined "public records" using the same basic definition since 1973, when the definition included "all documentary material, regardless of media or characteristics, made or received and maintained by a municipality in accordance with law or regulation or in the transaction of its official business." 30 M.R.S.A. § 2212(3) (1973). Maine argues that, under this definition, the Pownalborough Print is an official public record.

appeared in the South Carolina Code of Laws in 1962, could not possibly support the State's characterization of the law as it existed in the Civil War era and that the passage of statutes providing for the keeping of books, records, and papers belonging to the Executive Chamber "strongly suggests that, prior to [their passage], such papers were *not* so regulated). Here, as in *Middlesex County*, the Pownalborough Print pre-dates Maine's 1973 definition of "public records," and Maine did not produce evidence that Maine's legislators intended for this definition to apply retroactively to all of the documents that ever entered the State of Maine. Therefore, the 1973 definition of "public record" does not apply to this case.

Second, even if Maine's 1973 definition of a "public record" applied retroactively, this definition was not amended to include local government records until May 23, 1995, two days after Mr. Moore sold the Pownalborough Print at the estate auction. The amendment did not become effective until, at the earliest, August 23, 1995. *See* 5 M.R.S.A. § 92-A (1995 amendments); Maine Const. Art. IV, Sec. 16 (setting the effective date of Acts and joint resolutions 90 days after recess). The enactment date suggests that prior to August 23, 1995 – and at the time Mr. Moore sold the print at the auction – Maine's definition of a "public record" did not even apply to town records.

Third, even if Maine's 1973 public record statute applied, it defines public records as "received and maintained" by a municipality. Whether the Pownalborough Print was "maintained" by Pownalborough or Wiscasset has not been conclusively established here. Additionally, the maintenance must be, according to the Maine statute, "in accordance with laws or regulations or in the transaction of its official business." 30 M.R.S.A. § 2212(3). No law or regulation has been offered to show that Pownalborough or Wiscasset were required to "maintain" the print. And it was not suggested at trial that the Declaration of Independence was involved with Pownalborough's "transaction of its official business."

In sum, no legislation of Massachusetts or of Maine ever made this print, or any broadside for that matter, a public record. Additionally, the 1973 legislation and the 1995 amendment defining public records reinforces the conclusion that, prior to the legislation, papers such as this print were in fact unregulated.

### b. *Kept by the Town and Wrongfully Removed*

Despite an absence of legislation ordering the retention of the broadside, Maine may still prove ownership of it as a public record if Maine

established that the print was in fact kept by the town clerk and then wrongfully removed from its place of keeping. *Middlesex County v. Hamilton*, 28 Va. Cir. 283, 288 (1992).

Maine primarily relied on three bases to support its contention that the print was kept by the town clerk: the print's fold patterns, the docketing on the back of the print, and the fact that Sol Holbrook served as the Wiscasset town clerk for forty-four years, and the print was found in his daughter's attic.

### i. *Fold Patterns*

With respect to the fold patterns, the parties do not dispute that the print, which is approximately 15 inches by 20 inches in size, was folded into eighths. In *Middlesex County v. Hamilton*, the court found that expert testimony suggested that many of the documents at issue had been folded in a fashion that indicated they were kept and stored by a town clerk.[6] The same is not true here.

First, Mr. Whitaker did testify that the folding process was a common way of storing public records. He could not identify, however, a common folding pattern when comparing the print's folding patterns to the patterns on other Pownalborough or Wiscasset town records.

Second, Mr. Kaller and Mr. Jonathan Kiffer, a specialist at Sotheby's in colonial era documents, testified that between them they had viewed between 80 and 100 broadsides of the Declaration of Independence, and that all of them were folded because of the odd size of the paper, but not necessarily because they were kept by town clerks.

Third, Mr. Adams testified that folding the broadside into eighths would allow it to achieve standard posting size. By folding it in one manner, he demonstrated that the address "to the Rev. Mr. Moore," the original intended recipient, would appear on the outside of the document, as though for mailing. This testimony infers that the broadside could have been folded into eighths even before it was sent to the Rev. Moore, much less before it even reached the town clerk of Pownalborough. But no one knows.

Given this evidence, the Court finds that the folds do not conclusively indicate that the Pownalborough Print was kept by the town clerk. They simply are not determinative one way or the other.

---

[6] The fold patterns did not establish, however, that the documents left the clerk's office wrongfully. *Id.* at 289.

## ii. Docketing Entries[7]

Next, Maine relied on the docketing entries on the reverse side of the Pownalborough Print as evidence that the print was kept by the town clerk for many years. The reverse of the print contains the docketing entries, "From 1776 to 1784, Warrants, etc.," "Town Warrants etc.," "Pownalborough," "Declaration of Independence, July 1776," and "Loose Papers no Taxes." At the outset, the entries on their face do not connect or relate to one another in any manner. Additionally, as to these entries, Mr. Whitaker testified that he saw no clear system of indexing used by the towns of Pownalborough or Wiscasset to which they might relate. Indeed, of the thirty copies of town records introduced by Maine, not one had multiple docket entries on the back such as those on the reverse side of the Pownalborough Print. *See* Defendant's Exhibits 6-35.

Mr. Kaller testified that, when purchasing the Pownalborough Print at the auction, he and his partners considered the paths the print may have taken to leave the town's hands. Insofar as the docketing entries were concerned, he conjectured that anyone could have made them. Specifically, he mentioned that at least one docketing entry struck him as incorrect because it identified the Pownalborough Print as a "warrant," when in fact, it was not a warrant.

Without making a specific finding, the Court observes that the print does not suggest a document that would normally constitute a warrant. *Black's Law Dictionary* defines a warrant as (1) "a writ directing or authorizing someone to do an act, especially one directing a law enforcer to make an arrest, a search, or a seizure;" (2) "a document conferring authority, especially to pay or receive money; or (3) "an order by which a drawer authorizes someone to pay a particular sum of money to another." (8th ed. 2004.)

In any event, whether the docketing entries were added by town clerks, or by Holbrook family members, or by anyone else, would be only speculation. There is no pattern or index or scheme which makes clear their meaning. And even if the Court assumes that town clerks added the docketing

---

[7] The term "docketing entries" is used not to set out or confirm an indexing system, but rather as a term used by antique dealers who specialize in colonial era documents to describe writings found on the reverse of a broadside or other similar documents.

entries, "docketing and recordation merely show that the [Pownalborough Print] entered the hands of the clerk, not that [it] stayed there and [was] wrongfully removed." *Middlesex County v. Hamilton*, 28 Va. Cir. 283, 291 (1992). Or, put differently, the docketing entries may show identification of the document and its possession by the clerks, but they do not show with any degree of certainty that the entries signify that the document was to be permanently retained, as opposed to temporarily stored or set aside, or pigeon holed under "etc.,", for example.

In many respects, however, this is the closest question presented, namely, if the docketing entries represent identification, by name ("Declaration of Independence") or category ("Loose Papers, No Taxes" or "Town Warrants, etc.," for example), does such identification without more, namely indexing and proof of actual retention, make the print a town record? Put differently, would retention of any document by any town clerk, regardless of the fact that it might not relate to town business, make it a town record? Absent proof of a clearer and more definite intention and pattern to maintain such a document, coupled with the document's having a relationship to town business, the Court concludes not.

Lastly, Maine makes much of the fact that many town documents retained were also recorded in the town book. *See* Defendant's Ex. 5. The Pownalborough Print was not one of these, and as a result, Maine argues that it must have been wrongfully removed. Yet, on the other hand, the town records and the record book, an index, in effect, of what was retained, were presumably passed from clerk to clerk. Any clerk doing an inventory of the town records would have known which records were missing by looking at the town book. Here, it was stipulated that the words of the Declaration of Independence were copied into the town book from the Pownalborough Print. *See* Joint Stipulation 32. If the original print was to be retained as an official town record, then, at some point, some clerk receiving the book without also receiving the broadside should have realized that it was missing. Yet, Maine presented no evidence that any town clerk ever realized the Pownalborough Print was not among the town records and, as a result, sought it out. The print was never believed "missing" until Maine learned of its sale. Rather than assuming that the print was wrongfully removed as Maine concludes, this Court finds it equally as likely that the clerks were unconcerned with the broadside because, once recorded into the town book, it did not need to be and was not in fact retained.

### iii. *Holbrook Family*

Finally, Maine relies on the fact the Pownalborough Print was found in the attic of Sol Holbrook's daughter and that Sol Holbrook had been the town clerk from 1885 to his death in 1929. Mr. Whitaker testified that town clerks typically worked out of their homes and maintained records in their homes. Yet a library was built in Wiscasset in 1805 to store town records, obviating the need for the town clerk to maintain possession of them. The current town clerk, Sandra Johnson, testified by deposition that she did not know when Wiscasset actually began to keep certain town records at the library. What is known with certainty, however, is that, at some point, town records began to be kept in the library. Yet the print was not found in the library. Thus, Maine argued that the print, not being in the library, must have been in the possession of Sol Holbrook, the town clerk, until his death, when it somehow left his possession.

Although this supposition is possible, no evidence establishes that the Pownalborough Print was ever in Sol Holbrook's possession. Sol Holbrook never lived in the duplex house where the print was found. The house was actually a rental property from 1930 until the late 1960s, when Ms. Plumstead and Ms. Holbrook began occupying it. The print was not found along with other town records. Instead, it was found folded in a box containing family receipts and other papers. Although minutes of one town meeting were also found in the attic, Mr. Moore testified that such minutes were often duplicated for town residents requesting a copy. These town minutes sold for $10 at the same estate auction where the Pownalborough Print sold, indicating their lack of rarity. No evidence was presented that the State of Maine or any town in Maine ever sought to recover these minutes as a public record. Indeed, these very minutes were a duplicate of the original minutes found in the town's records. *See* Plaintiff's Exhibit 60, Defendant's Exhibit 9.

As a result, the evidence, at best, can only suggest that Sol Holbrook personally had possession of the print because it was found in the possession of his daughter. But, even assuming that to be so, it still begs the ultimate question in this case, namely, whether Sol Holbrook gave to someone a town record as opposed to a discarded broadside. And it is here also that the evidence for Maine is deficient.

### iv. *Broadsides*

Both Mr. Kaller and Mr. Kiffer testified regarding the nature of broadsides, explaining that broadsides are "ephemeral," meaning that they were to serve a limited purpose and then would be thrown out. For instance,

here, the Pownalborough Print contained an order that it be *read* by ministers to their congregations and then delivered to the town clerks to be *recorded* in the town books. Given these words, Mr. Kaller testified that the print, as a broadside, would have fulfilled its purpose after it had been read to the congregations and recorded in the town book. Having fulfilled its purpose, the town clerk would have had no reason to keep it after its recordation.

In reply, Maine makes two arguments. First, Maine offered several public records of Pownalborough from the late 18th and early 19th centuries to indicate that they were kept even after being recorded in the town book. These records included marriage records written by the Rev. Moore and reports of committees relating to laying out of roads.

Second, Maine argues that the original broadside would be kept as an original because mistakes may have been made when the clerk copied its words into the town record book. In support of this argument, Maine pointed out that the town clerk did in fact make several mistakes when copying the Declaration of Independence into the town book.

Notwithstanding, Maine presented no evidence that any town clerk ever kept any broadsides, whether recorded in the town book or not. That other documents were recorded in the town record book and kept, the wedding records and laying out of roads committee reports, for example, conversely suggest that the broadside was not a similar document, namely a record of a town's activities and that of its inhabitants which would naturally be kept. Put differently, the Pownalborough Print does not reflect the town's doings in any respect. Rather, it appears in the town record book not because it reflects town business but because it was ordered to be recorded "as a memorial." No reason exists as to why it would have been further retained with what are akin to the vital statistics of a town. After its reading and memorialization in the town book, its purpose had been fulfilled according to its very own terms.

Mr. Kaller testified that, out of the approximately 200 Salem broadsides printed, he was aware of only fifteen that still exist. The vast majority of these have been privately transferred from owner to owner.

As the United States Court of Appeals for the Fourth Circuit recently observed:

> If the State were not required to defeat the presumption [of ownership in the possessor] in order to gain title, a whole system of archival practice could be thrown into question. The State could claim ownership of papers of Governors Pickens and Bonham held by the Library of Congress and Duke University. . . . The result would be immense litigation over papers held by private

owners, universities, historical societies, and federal depositories. It would upset settled archival arrangements and the expectations of institutions and historical scholars alike.

*Willcox v. Stroup*, 467 F.3d 409, 414 (4th Cir. 2006).

Here also, if the State of Maine were not required to prove its ownership of the Pownalborough Print, the vast majority of broadsides, which have been transferred privately from owner to owner, could become the subject of immense litigation which would upset the expectations of those private individuals, institutions, universities, and foundations that currently possess them unaware of any superior claims.

Similarly, Mr. Whitaker testified that the Salem broadsides were distributed to 187 towns. Yet, there is no evidence that any of these approximately 200 broadsides have ever been found in the records or possession of any town. Such evidence strongly suggests that the reason these broadsides have not been found in any town's possession is that they were not to be kept or were in fact actually kept.

In sum, there is simply no evidence that the Pownalborough Print was officially or formally kept by a town clerk of Pownalborough or Wiscasset. Even if the town through some of its clerks retained the print for some period of time, Maine provided no evidence that such keeping was an official act or that the print was thereafter wrongfully removed or converted. In short, Maine failed to prove that the Pownalborough Print was ordered to be kept by the town, was in fact purposefully kept by the town, and, as a result, was wrongfully removed from the town's possession.

### c. *Public Records under the Common Law*

The final method, as outlined in *Middlesex County v. Hamilton*, for determining whether Maine, as a nonpossessory governmental entity, may recover the Pownalborough Print involves the application of the common law definition of a public record.

The Virginia Supreme Court has defined a public record as:

> A written memorial made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said, or done. It must be a written memorial, must be made by a public officer, and that officer must be authorized by law (not required) to make it. Whenever a written record of the transactions of a public officer in his office is a

convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept, it becomes a public document, a public record belonging to the office and not the officer; is the property of the state and not of the citizen and is in no sense a private memorandum.

*Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881-82 (1874).

Maine argues that the Pownalborough Print meets this common law definition of a public record because the Executive Council of Massachusetts ordered that the document be made, and that printer Ezekiel Russell acted pursuant to the authority of that Order when he prepared the print and delivered it to the ministers.

But, even so, Russell was not a public officer. He did not become one by virtue of the Order. Rather, he remained a private printer with whom the State of Massachusetts presumably contracted to print broadsides of the Declaration of Independence. Indeed, later broadside versions printed by him contained an advertisement at the bottom offering the document for sale "as a memento." *See* Defendant's Ex. 78. In contrast, the town clerk does meet the *Coleman* test of a public officer because the town clerk was authorized by law to prepare and did prepare by recording the words of the Declaration of Independence into the town book "a written memorial . . . intended to serve as evidence of something written, said, or done." *Coleman v. Commonwealth*, 66 Va. (25 Gratt.) 865, 881-82 (1874). As a result, this Court finds that it is the record of the language of the broadside in the town book, and not the broadside itself, which is the public record under common law.

Because Maine, as a nonpossessory governmental entity, cannot prove ownership of the print as a public record, the common law presumptions of ownership must ultimately govern the outcome of this case.

## 2. *Common Law Presumptions of Ownership*

In a similar case involving the State of South Carolina's assertion that it was entitled to recover Civil War-era gubernatorial papers found in a deceased woman's home, the United States Court of Appeals for the Fourth Circuit recently stated as follows:

The presumption of ownership from possession locates the parties' burdens. Where the party not in possession is able to establish superior title by satisfactory evidence, the presumption

gives way in favor of this evidence. But where no such evidence is produced, where, as here, the events at issue are impossible to reconstruct, the presumption recognizes and averts the possibility of a court's presiding over a historical goose chase.

*Willcox v. Stroup*, 467 F.3d 409, 413 (4th Cir. 2006).

Similarly, in Virginia, proof of possession is presumptive proof of ownership. *Saunders v. Greever*, 85 Va. 252, 289, 7 S.E.2d 391, 410 (1888). Here, not only is Mr. Adams currently in possession of the Pownalborough Print, which is presumptive proof that he owns it, but Mr. Adams also asserts ownership over the print as a bona fide purchaser for value.

a. *Mr. Adams as a Bona Fide Purchaser*

The evidence at trial established that Mr. Adams purchased the Pownalborough Print from Simon Finch, a rare book dealer in London, England, for $475,000. Mr. Adams testified that Mr. Finch was a reputable dealer and that he relied on Mr. Finch to investigate the provenance of the print.

In December 2001, Mr. Finch provided Mr. Adams of a description of the print with the following description of its provenance:

> Provenance: the broadside is docketed on the verso by Rev. Thomas Moore of Pownalborough returning it to the town clerk, "as the law depicts . . . to record [copy] the same in their respective town, or District Books, there to remain a perpetual memory thereof." Two centuries after this document was read in public and then copied into town records, the original was rediscovered in the attic of the late postmistress of Wiscasset, which was formerly Pownalborough.

*See* Plaintiff's Exhibit 36.

Mr. Adams testified that he was not aware of an adverse claim to the Pownalborough Print, and the State of Maine did not introduce any evidence to the contrary. Instead, Maine relied heavily on its contention that neither the State of Maine nor the towns of Pownalborough and Wiscasset ever conveyed title or ownership of the print to anyone. But this fact, standing alone, would not put Mr. Adams on notice of an adverse claim unless Maine's title to the Pownalborough Print was apparent.

Based on Pownalborough Print's provenance as understood at the time of its purchase, the fact that no assertion of adverse title had been made, and the fact that Mr. Adams paid $475,000 to a reputable dealer for the print, this Court finds that Mr. Adams was a bona fide purchaser for value.

b. *Title to the Pownalborough Print*

In Virginia, a purchaser of goods acquires all title which his transferor had or had the power to transfer. A person with voidable title has power to transfer a good title to a good faith purchaser for value. Va. Code Ann. § 8.2-403(1); *see also Toyota Motor Credit Corp. v. C. L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 247, 506 S.E.2d 14, 16 (1998). Title following loss of possession by carelessness, neglect, mistake, or even fraud, is *voidable*, but not void. Therefore, a bona fide purchaser in those circumstances acquires valid title. *Toyota Motor Credit Corp. v. C. L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 247-48, 506 S.E.2d 14, 16 (1998); *see also Oberdorfer v. Meyer*, 88 Va. 384, 386, 13 S.E.2d 756, 756-57 (1891) (holding that a vendor, on discovery of fraud, may disaffirm a contract and reclaim goods, provided they have not passed into the hands of a bona fide purchaser). But not even a bona fide purchaser can acquire valid title from a thief. *Id.*

Here, because Mr. Adams is a bona fide purchaser for value, his title to the print is valid unless the print was converted from its rightful owner. Under Virginia law, Maine, as the nonpossessory party, bears the burden of proving that it lost ownership or possession of the Pownalborough Print by theft or conversion. *Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000).

As discussed fully, the evidence in this case is simply insufficient to prove that Maine ever owned the Pownalborough Print or that the print was ever wrongfully removed from the State of Maine or the towns of Pownalborough or Wiscasset. As in *Willcox*, the "events at issue are impossible to reconstruct." *Willcox v. Stroup*, 467 F.3d at 413 (4th Cir. 2006). The best that can be said is that the print was in the possession of the town clerk of Pownalborough for the purpose of recording it in the town book. That much was done. Thereafter, nothing is clear. Neither the folding nor the docketing entries are conclusive. No law, regulation, order, statute, ordinance, or edict required the clerk to keep or maintain the broadside. The broadside itself did not order that it be kept. The broadside did not concern the town's activities or regular business. Additionally, no evidence was presented of any town in Massachusetts or Maine ever having such a broadside in its actual possession. Although the docketing entries and the finding of the print among

the belongings of a town clerk's daughter, for example, may point to possession of the print by a town clerk of Pownalborough or Wiscasset, when and how the print left the town's possession, by accident or design, is not capable of being known and is purely conjecture.

In a court of law, conjecture as to whether the town had and then lost possession of the print is not enough to prove its ownership. Mr. Adams, as a bona fide purchaser and as the party in possession of the print, has demonstrated his claim of ownership. Maine, as the nonpossessory party, bears the burden of proving title superior to that of Mr. Adams. This burden cannot be met by conjecture, speculation, or surmise. Absent a showing that the print was required to be kept or that it was purposefully kept, its path into the stream of commerce is unfettered. Under these circumstances, Mr. Adams holds valid and superior title to the Pownalborough Print.

## Conclusion

For these reasons, the Court holds that the State of Maine, on behalf of the Town of Wiscasset, failed to prove a claim of ownership to the Pownalborough Print that is superior to that of Mr. Adams, and this Court confirms Mr. Adams' ownership of and title to the subject Pownalborough Print of the Declaration of Independence.

## Order

This matter came before the Court on January 14, 15, and 16, 2008. For the reasons stated in this Court's Opinion Letter dated February 22, 2008, which is attached hereto and made a part of hereof, it is ordered that Plaintiff's ownership of and title to the subject Pownalborough Print of the Declaration of Independence is confirmed.